REBECCA G. BRADLEY, J.
¶ 1. The issues before us arise from St. Croix County's petition to terminate Juanita A.'s parental rights to her son, Matthew *174 D., born March 23, 2009. The petition alleges both that Matthew was a child in continuing need of protection or services ("continuing CHIPS"), under Wis. Stat. § 48.415(2) (2013-14),[1] and that Juanita failed to assume parental responsibility, under Wis. Stat. § 48.415(6).[2] We must determine whether Juanita received proper notice under § 48.415(2), and, if so, whether sufficient evidence supports the remaining elements of the continuing CHIPS ground for termination. The notice issue requires us to clarify whether Waukesha County v. Steven H., 2000 WI 28, 233 Wis. 2d 344, 607 N.W.2d 607, created an unequivocal rule that the statutorily prescribed written notice must be given in the last order placing a child outside his or her home and whether six months must pass after that last order before filing a termination of parental rights ("TPR") petition.
¶ 2. We hold that the notice Juanita received satisfied the statutory notice requirement in a TPR action based on continuing CHIPS, and that the evidence was sufficient to support the remaining elements of continuing CHIPS set forth in Wis. Stat. § 48.415(2). We further hold that Steven H. did not establish a "last order, plus six-months rule"; rather, Steven H. emphasized that parents facing termination of parental rights based on continuing CHIPS must have received written notice in one or more court orders warning them that termination may occur. In *175 Steven H., the last order contained the written notice; therefore, based on the facts in that particular case, the written notice required by § 48.415(2) was satisfied by the last order.
¶ 3. In adhering to the important principle of stare decisis, we do not overrule Steven H. Rather, we acknowledge that two sentences in that case directly contradict the plain language of Wis. Stat. § 48.415(2). As a result, our circuit and appellate courts have issued inconsistent decisions when addressing factual scenarios such as the one presented here where the last order does not comply with the statutory notice requirements, but the circuit court finds another order did comply and the parent was adequately warned that parental rights were at stake and how to prevent a termination of those rights. Since Steven H., circuit courts have had to decide whether to follow the plain statutory language when a parent did not receive notice in the last order or follow the two sentences in Steven H. that conflict with the court's extensive discussion of the legislative purpose of Wis. Stats. §§ 48.356(2) and 48.415(2) — to provide adequate notice to parents. Our opinion clarifies Steven H. so that our circuit courts are able to consistently apply the plain language of the statute, and ensure that parents facing termination of their parental rights receive the notice required by Wis. Stat. § 48.415(2) without delaying a very important purpose of these statutes— permanency for the child.
¶ 4. Accordingly, we clarify Steven H., leaving intact its analysis and discussion; however, the conflicting sentence in paragraph 3 is withdrawn[3] and we *176 clarify that the last sentence in paragraph 31 shall not be construed to create a last order, six-months rule. The language in the last sentence in paragraph 31 is limited to the facts of Steven H. where only the last order contained the written notice and the child had been out of the home for six months or longer.[4] The plain language of § 48.415(2) does not require that the written notice must be in the last order or that six months must pass after the last order before the petition to terminate parental rights may be filed. Accordingly, we reverse the court of appeals' decision[5] and affirm the circuit court's order[6] terminating Juanita's parental rights to Matthew.
I. BACKGROUND
| 5. Juanita has physical, cognitive and mental health challenges. When Matthew was born on March 23, 2009, Juanita had two other sons in her home, 12-year-old John, who is autistic, and 3-year-old Henry, who was removed from Juanita's home in May 2009 because Juanita was unable to properly super *177 vise and maintain reasonable control over Henry. Juanita's parental rights to Henry were terminated in May 2012. When Matthew was eight days old, he was removed from Juanita's home based on reports that Matthew's two older brothers had dropped him, shaken him, and were not properly supporting his head when holding him. Matthew was returned to Juanita at the end of May 2009.
¶ 6. In June 2009, the circuit court found Matthew to be a child in need of protection or services following an incident where police were called to Juanita's home and found Matthew struggling to breathe. Juanita told police Matthew had not taken a breath for a minute and his lips turned blue, but she did not want to call 911 for a "little problem like that." Matthew was taken to the hospital for treatment. He recovered and remained in Juanita's care subject to certain conditions and with support and services in place to assist her. The circuit court extended this in-home placement continuing CHIPS order several times. At the end of July 2011, when Matthew was almost two and one-half years old, he was again removed from Juanita's home, based on concerns that Juanita could not properly care for him and that her inability to adequately supervise Matthew put him in danger.
¶ 7. In August 2011, the circuit court issued a written CHIPS order changing Matthew's placement from Juanita's home to a foster home. At a court hearing on October 5, 2011, where Juanita appeared with her lawyer, the circuit court read the TPR warnings to Juanita, and on October 11, 2011, the court issued a dispositional order amending the August order and attaching the conditions Juanita was required to meet before Matthew could be returned to *178 her home. This October 11 order also had attached a "Notice Concerning Grounds to Terminate Parental Rights" that Juanita had signed. Under Wis. Stat. § 48.356, whenever the court orders a child to be placed outside the home because the child has been found to be in need of protection or services, the court must orally inform the parent — if present in court — of any applicable grounds for termination of parental rights and the conditions necessary for the child to be returned to the home. Additionally, any written order placing a child outside the home, or extending the out-of-home placement, must contain this information.
¶ 8. Juanita returned to the circuit court on December 12, 2011, where the court again gave oral TPR warnings to Juanita and ordered an extension of the October 11 dispositional order. The extension contained a provision notifying Juanita that: "All conditions of the dispositional order/consent decree remain in effect," but the court did not attach the separate TPR warnings. Juanita appeared for another hearing on September 6, 2012, where the circuit court again gave her oral TPR warnings. On September 11, 2012, the circuit court issued another extension order, which contained the same language noted above: "All conditions of the dispositional order/consent decree remain in effect" but it did not attach separate TPR warnings.
¶ 9. St. Croix County first filed a TPR petition as to Matthew in January of 2013, but it was dismissed without prejudice on June 12, 2013 because the prosecutor inadvertently failed to appear for the pre-trial hearing. On June 18, 2013, St. Croix County filed a second TPR petition seeking to terminate Juanita's parental rights based on continuing CHIPS under Wis. Stat. § 48.415(2), and failure to assume parental *179 responsibility under Wis. Stat. § 48.415(6). On September 4, 2013, the circuit court issued another extension order, which contained the same language noted above: "All conditions of the dispositional order/consent decree remain in effect" but it did not attach separate TPR warnings.[7]
¶ 10. The fact-finding hearing, tried to the court, occurred in December 2013. After St. Croix County presented its case, Juanita moved the circuit court to dismiss the TPR petition, arguing failure of proof on the elements and inadequate notice contrary to Wis. Stat. § 48.415(2) and Wis. Stat. § 48.356. The circuit court denied both motions. With respect to the notice issue, the circuit court ultimately ruled Steven H. did not establish an unequivocal "last order, plus six-months rule." Instead, it held that "substantial compliance" with the notice statute was sufficient. It reached this conclusion based on Steven H.'s emphasis on the legislative purpose of the Children's Code, the court of appeals' interpretation of Steven H. in Waushara County v. Lisa K., 2000 WI App 145, 237 Wis. 2d 830, 615 N.W.2d 204, and Steven H.'s discus *180 sion that the purpose of the notice statutes "is meant to ensure that a parent has adequate notice of the conditions with which the parent must comply for a child to be returned to the home. The notice is also meant to forewarn parents that their parental rights are in jeopardy." Steven H., 233 Wis. 2d 344, ¶ 37. The circuit court then found the notice given to Juanita sufficient to comply with the statutes:
[Notice to Juanita] was sufficient under § 48.356(2) to inform her that her parental rights were in danger of being terminated and advising her of the conditions necessary for the return of the child. Although only one TPR warning was written, this Court finds it is not fatal that the 2012 extension order did not contain written TPR warnings. From the date of the October 5, 2011, extension hearing, [Juanita] appeared before the court, with counsel, on at least ten different occasions related to this matter. She was given a written TPR warning on October [11], 2011, and given oral TPR warnings on three occasions including: October 5, 2011, December 12, 2011, and September 6, 2012. Less than five months after the September 6, 2012, TPR warnings were given, the first [TPR] Petition ... was filed. The current [TPR] Petition... was filed less than one year after the September 6, 2012, hearing. The number and frequency of the court proceedings, in addition to four occasions since October 5, 2011, [Juanita] was orally given TPR warnings, lead this Court to conclude that she had sufficient notice under § 48.356(2). [Juanita] had notice of the conditions required of her for the child to return to her care and that her legal rights were in jeopardy if she did not meet those conditions.
¶ 11. Further, the circuit court rejected Juanita's claim that she was "confused" about whether termination was looming:
*181 This Court has noted the number and frequency of the [CHIPS] proceedings ... as well as the number of warnings, both oral and written, she was given in the two years prior to the filing of the current Petition. In addition, she has had full representation throughout [the CHIPS proceedings] and these present proceedings, and has not raised, through counsel or personally, any issue of confusion with regard to the obligations, conditions, or consequences until now.
¶ 12. The circuit court found grounds existed on the continuing CHIPS allegation, but that St. Croix County failed to prove Juanita had not assumed parental responsibility for Matthew. The circuit court found Juanita unfit to parent Matthew and the case proceeded to a dispositional hearing. At the conclusion of the dispositional hearing, the circuit court found it was in Matthew's best interests to terminate Juanita's parental rights. The circuit court entered the order terminating Juanita's parental rights in May 2014.
¶ 13. Juanita appealed to the court of appeals, which reversed the circuit court and remanded "for vacation of the termination order and dismissal of the termination of rights petition." St. Croix Cnty. DHHS v. Michael D., No. 2014AP2431, unpublished slip op., ¶ 1 (Wis. Ct. App. Jan. 16, 2015). Citing Steven H., the court of appeals ruled that because the last order Juanita received did not contain written notice warning her about termination, St. Croix County failed to establish the notice element required under Wis. Stat. § 48.415(2)(a)1. St. Croix Cnty. DHHS v. Michael D., No. 2014AP2431, unpublished slip op., ¶ 16 (Wis. Ct. App. Jan. 16, 2015).
*182 II. ANALYSIS
¶ 14. This appeal involves issues relating to the involuntary termination of parental rights, under Chapter 48 of the Wisconsin Statutes, the Children's Code. Wisconsin Stat. § 48.417 requires the authorized agency to file a petition to terminate parental rights under certain circumstances including when: "[t]he child has been placed outside of his or her home ... for 15 of the most recent 22 months" and "the petition shall be filed ... by the last day of the 15th month . . . the child was placed outside of his or her home." Wis. Stat. § 48.417(l)(a). Wisconsin Stat. § 48.415 sets forth the grounds for termination, including "Continuing need of protection or services," which provides in relevant part:
Grounds for involuntary termination of parental rights. At the fact-finding hearing the court or jury shall determine whether grounds exist for the termination of parental rights... . Grounds for termination of parental rights shall be one of the following:
(2) Continuing need of protection or services. Continuing need of protection or services, which shall be established by proving any of the following:
(a) 1. That the child has been adjudged to be a child or an unborn child in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders under s. 48.345, 48.347, 48.357, 48.363, 48.365, 938.345, 938.357, 938.363 or 938.365 containing the notice required by s. 48.356 (2) or 938.356 (2).
2. a. In this subdivision, "reasonable effort" means an earnest and conscientious effort to take good faith *183 steps to provide the services ordered by the court which takes into consideration the characteristics of the parent or child or of the expectant mother or child, the level of cooperation of the parent or expectant mother and other relevant circumstances of the case.
b. That the agency responsible for the care of the child and the family or of the unborn child and expectant mother has made a reasonable effort to provide the services ordered by the court.
3. That the child has been outside the home for a cumulative total period of 6 months or longer pursuant to such orders not including time spent outside the home as an unborn child; and that the parent has failed to meet the conditions established for the safe return of the child to the home and there is a substantial likelihood that the parent will not meet these conditions within the 9-month period following the fact-finding hearing under s. 48.424.
Wis. Stat. § 48.415(2)(a)l.-3.
A. Notice
¶ 15. The first issue is whether the written notice requirements under Wis. Stat. § 48.415(2)(a)l. were satisfied. This issue requires statutory interpretation, which is a question of law that we review de novo. Shannon E.T. v. Alicia M. V.M., 2007 WI 29,1 31, 299 Wis. 2d 601, 728 N.W.2d 636. Our standards for interpreting statutes are well-known and need not be repeated here. See State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110.
f 16. The language of Wis. Stat § 48.415(2)(a)l. requires St. Croix County to prove Matthew "has been adjudged to be a child ... in need of protection or *184 services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders. . . containing the notice required by s. 48.356(2)." (Emphasis added.) Wisconsin Stat. § 48.356 requires the circuit court to give oral and written warnings to parents whose children are placed outside their home "of any grounds for termination of parental rights under s. 48.415 which may be applicable." Section 48.356 provides in full:
Duty of Court to Warn. (1) Whenever the court orders a child to be placed outside his or her home, orders an expectant mother of an unborn child to be placed outside of her home, or denies a parent visitation because the child or unborn child has been adjudged to be in need of protection or services under s. 48.345, 48.347, 48.357, 48.363, or 48.365 and whenever the court reviews a permanency plan under s. 48.38(5m), the court shall orally inform the parent or parents who appear in court or the expectant mother who appears in court of any grounds for termination of parental rights under s. 48.415 which may be applicable and of the conditions necessary for the child or expectant mother to be returned to the home or for the parent to be granted visitation.
(2) In addition to the notice required under sub. (1), any written order which places a child or an expectant mother outside the home or denies visitation under sub. (1) shall notify the parent or parents or expectant mother of the information specified under sub. (1).
Subsection (1) sets forth the required oral warnings and subsection (2) sets forth the required written warnings. Only subsection (2) is referenced in the TPR based on continuing CHIPS statute.
¶ 17. We begin by emphasizing that this is a TPR case, not a CHIPS case. Therefore, the case is governed *185 by Wis. Stat. § 48.415(2) — a TPR statute. Section 48.415(2) makes the written notice in the CHIPS statute, Wis. Stat. § 48.356(2), an element to prove in a TPR case grounded in continuing CHIPS to ensure that a parent whose rights are being terminated has — at least one time — received written notice to that effect. The language of the TPR statute does not specifically mention the last order, the first order or use the term every order. Rather, it references one or more of the court's written orders notifying a parent of applicable grounds for termination of parental rights.[8] We are not at liberty to disregard the plain words of the statute and we will not attempt to improve the statute by adding words not chosen by the legislature. It is undisputed that the October 11, 2011 written order contains the statutorily prescribed termination of parental rights warnings. Thus, the statutory requirement was satisfied in this case because one order —the October 11, 2011 order — included the written TPR notice warning Juanita that her parental rights to Matthew were in jeopardy.
¶ 18. We could end our analysis here but for the fact that Steven H. has created a question in the court of appeals and circuit courts as to whether Steven H. created a bright-line rule requiring that the last order in a CHIPS case contain the written notice in order to satisfy Wis. Stat. § 48.415(2)(a)l. Courts, including the *186 circuit court in the instant case, are ruling different ways on this question. As we have seen here, this circuit court, faced with the factual scenario where a parent had adequate notice despite the last order not containing the Wis. Stat. § 48.356(2) warnings, concluded the elements for termination based on continuing CHIPS were satisfied because one order had the written warnings attached. This circuit court, faced with a choice between the plain language of Wis. Stat. § 48.415(2) requiring only one order and two conflicting sentences in Steven H. about the last order, chose to apply the plain language of the statute.
f 19. The court of appeals, in Lisa K., 237 Wis. 2d 830, ¶ 13 reached a similar conclusion. In Lisa K, the last extension order before the TPR filing did not contain the notice required by Wis. Stat. § 48.356(2), but the previous dispositional orders contained the requisite notice. Lisa K., 237 Wis. 2d 830, ¶ 2. After discussing Steven H., the court of appeals rejected Lisa K.'s argument that Steven H. created a last order, six-months rule. Id., ¶¶ 5-6. Rather, the court of appeals held that "notice and adequate information were the dispositive factors in CHIPS notices which are followed by termination of parental rights proceedings," id., ¶ 8, and therefore, as long as a parent "had more than adequate notice of what was expected of her for the return of her children to her, and was more than adequately forewarned that her parental rights were in jeopardy... it is not relevant. . . that the final order . . . did not contain" all the notice requirements of § 48.356(2). Lisa K., 237 Wis. 2d 830, ¶ 10.
f 20. Additional cases demonstrate the factual variations that arise in TPR cases and how the courts have reached differing decisions based on Steven H. See State v. Amelia A., Nos. 2015AP630-31, unpub *187 lished slip op., ¶¶ 1-2 (Wis. Ct. App. June 9, 2015)(af-firming termination of parental rights where August 2012 order contained statutory notices but August 2013 order did not; held that because TPR petition was filed in November 2013, which was less than six months after August 2013 order, August 2012 order controls decision); Portage Cnty. DHHS v. Julie G., No. 2014AP1057, unpublished slip op., ¶1 20-21 (acknowledging Steven H. last order, six-months rule); Walworth Cnty. DHHS v. Jeanna R., No. 2009AP1952, unpublished slip op., ¶ 17 (Wis. Ct. App. Nov. 11, 2009)(same); Dunn Cnty. DHSS v. Dehra O., Nos 2008AP17715077, unpublished slip op., ¶ 15 (Wis. Ct. App. Jan. 9, 2009)(citing Steven H. for the proposition "we recognize it may not be necessary in every TPR case to demonstrate that the parent was provided the requisite notice of conditions in every single order, as long as the parent had adequate notice given the facts of the case."); Pierce Cnty. v. Amy F., No. 2004AP1552, unpublished slip op., ¶¶ 7-10 (Wis. Ct. App. Aug. 31, 2004)(where parent received required notice with first CHIPS order, Steven H. does not support her claim that failure to receive the last order with identical warnings as the first order requires dismissal); see also Comment, Wis JI — Children 324A ("The Committee believes that Wis. Stat. § 48.415(2) requires only that the last order placing the child/children outside the home contain the written warnings regarding the termination of parental rights.").
¶ 21. Thus, some courts read Steven H. to say the statutory notice must be in the last order filed six months before the TPR. Others read Steven H. to say as long as the parent has adequate notice of the conditions required for return of the child and sufficient warning that parental rights are in jeopardy, the *188 last order need not contain the notices required in Wis. Stat. § 48.356(2). As a result, some courts are not following the plain language of the statute, which requires that to prove continuing CHIPS as a TPR ground, the State must prove the parent received "one or more" orders containing the required notice.
f 22. Today, we clarify our decision in Steven H. The issue in Steven H. as it relates to the present case was whether Wis. Stat. §§ 48.415(2) and 48.356(2), in a TPR case based on the continuing CHIPS ground, "require that each and every order placing a child outside his or her home contain the written notice prescribed by § 48.356(2) in order for the termination of parental rights to proceed." Steven H., 233 Wis. 2d 344, ¶ 2, f 16. The answer to that question was and remains no. We reached that answer by applying the language of both statutes, cognizant of the legislative purposes expressed in the Children's Code. We noted the legislature used "one or more court orders" in § 48.415(2) but "any order" in § 48.356(2). We examined in depth the expressed legislative purposes set forth in the Children's Code in Wis. Stat. § 48.01(1), which directs "that courts act in the best interests of a child, that courts avoid impermanence in family relations and that courts eliminate the need for children to wait unreasonable periods of time for their parents to correct the conditions that prevent their return to the family." Steven H., 233 Wis. 2d 344, ¶ 36. Based on these considerations, we held that even though Steven H. received the statutorily prescribed notice in only one written order (the last order before the TPR petition was filed), this satisfied the statutes because the notice served its dual purpose of (1) "ensuring] that a parent has adequate notice of the conditions with which the parent must comply for a child to be *189 returned to the home"; and (2) "forewarn[ing] parents that their parental rights are in jeopardy." Id., ¶ 37.
1 23. We explained in Steven H. that interpreting the different terminology in Wis. Stat. § 48.415(2) ("one or more court orders") and Wis. Stat. § 48.356(2)("any order") as the appellant parent requested would frustrate the important goals of the Children's Code:
If the court interprets the statutes as Steven H. requests, [the child] would likely remain in the impermanence of foster care for many more months until the alleged defects in [the deficient orders] could be cured. This interpretation is not required by the words of Wis. Stat. § 48.356(2) and Wis. Stat. § 48.415(2). Furthermore, this interpretation is contrary to the express legislative policy of the Children's Code that courts act in the best interests of a child, that courts avoid impermanence in family relations and that courts eliminate the need for children to wait unreasonable periods of time for their parents to correct the conditions that prevent their return to the family. Wis. Stat. § 48.01(l)(a).
Steven H., 233 Wis. 2d 344, ¶ 36. As the circuit court here observed, this case has been pending since April 2009. Dismissing the petition because the last order did not have the requisite warnings despite compliance with the "one or more" language of the TPR statute, runs contrary to the purpose of the Children's Code. It also would cause us to reject and abandon the extensive and thoughtful analysis in Steven H. about the purposes for the Children's Code, which resulted in the Steven H. holding: "that Wis. Stat. § 48.356(2) and 48.415(2) do not require that each and every order removing a child from his or her home contain the *190 written notice prescribed by § 48.356(2) in order for the termination of parental rights to proceed." Steven H., 233 Wis. 2d 344, ¶ 3.
¶ 24. The plain language of § 48.415(2) requires that in a TPR case where the underlying ground to terminate is based on continuing CHIPS, the statutory notice requirements are satisfied when at least one of the CHIPS orders contains the written notice required under § 48.356(2). In Steven H., the last order satisfied this requirement. In Juanita's case, the October 11, 2011 order satisfied this requirement.[9] Accordingly, we make clear today that Steven H. did not create a bright-line "last order, six-months" rule and we withdraw the language in Steven H. creating that suggestion. See supra nn.3-4.
*191 ¶ 25. Although bright-line rules are helpful in practice, we cannot change the language of this statute, but must apply the statutory words chosen by the legislature. The language of Wis. Stat. § 48.415(2) is not ambiguous; it is very clear — only one or more of the written notices required under Wis. Stat. § 48.356(2) must be proven in a TPR case based on continuing CHIPS. The legislature does not explain why it used "one or more" in the TPR statute, but used "any" in the CHIPS statute. This does not, however, change our analysis. The legislature used "one or more" in § 48.415(2) and that is the language we must apply in this TPR case.
¶ 26. Our holding does not alter the statutory duty of the circuit court in CHIPS proceedings under Wis. Stat. § 48.356, whenever the court orders a child to be placed outside his or her home, to (1) orally warn parents who appear in court of any grounds for termination of parental rights which may be applicable and (2) include written notice of such grounds in any written orders for such out-of-home placement. These procedures effectuate another express legislative purpose set forth in Wis. Stat. § 48.01(ad) of assuring that parents' "constitutional and other legal rights are recognized and enforced." However, the legislature has not incorporated these mandates into the elements necessary to prove a continuing CHIPS ground in a TPR action under Wis. Stat. § 48.415(2). Accordingly, under a plain reading of the text of § 48.415, a TPR action based on allegations of continuing CHIPS is not precluded solely by noncompliance with § 48.356 in CHIPS proceedings, provided the elements of continuing CHIPS are proven.
¶ 27. Although Juanita's case does not involve an issue as to the six-months rule referenced in Steven H., *192 we address it for clarity. Wisconsin Stat. § 48.415(2) does not say the agency seeking a TPR must wait to file until six months after the last CHIPS dispositional order or extension thereof; rather, § 48.415(2)'s only reference to six months comes in Wis. Stat. § 48.415(2)(a)3., which provides that the agency seeking termination must prove: " That the child has been outside the home for a cumulative total period of 6 months or longer pursuant to such orders." There is no language stating the "6 months" must be after the last CHIPS dispositional order or extension; rather, the "6 months" is a "cumulative total period" under the CHIPS orders. Any other interpretation would require reading language into the statute that does not exist and unnecessarily delays permanency. Accordingly, we also withdraw any language in Steven H. suggesting the agency must wait six months after the last out-of-home placement order is issued before filing a TPR petition.
B. Sufficiency of the Evidence[10]
f 28. The second issue is whether there was sufficient evidence to meet the other elements of the continuing CHIPS ground for TPR under Wis. Stat. § 48.415(2)(a). The elements are:
*193 (1) The child has been adjudged CHIPS and placed or continued in placement outside his or her home pursuant to one or more CHIPS orders containing the statutorily prescribed notice; § 48.415(2)(a)l.,
(2) The responsible agency "made a reasonable effort to provide the services ordered by the court"; § 48.415(2)(a)2.,
(3) The child has resided outside the home "for a cumulative total period of 6 months or longer" under CHIPS order(s); § 48.415(2)(a)3., and
(4) "[T]he parent has failed to meet the conditions established for the safe return of the child to the home and there is a substantial likelihood that the parent will not meet these conditions within the 9-month period- following the fact-finding hearing under s. 48.424:" § 48.415(2)(a)3.
St. Croix County had the burden to prove all four elements by clear and convincing evidence.
¶ 29. Our standard of review in a challenge to the sufficiency of the evidence is whether there is any credible evidence to sustain the verdict. Sheboygan Cnty. DHHS v. Tanya M.B., 2010 WI 55, ¶ 49, 325 Wis. 2d 524, 785 N.W.2d 369. Under this standard, we conclude the evidence was sufficient.
| 30. First, as already discussed above, there is credible evidence to show St. Croix County satisfied the first element — the notice element. It is undisputed that Matthew was a child in need of protection or services placed outside his home under CHIPS orders and one of those orders — the October 11, 2011 order— contained the written notice prescribed by statute.
¶ 31. Second, there is credible evidence to show St. Croix County made reasonable efforts to provide *194 Juanita services ordered by the court. Wisconsin Stat. § 48.415(2)(a)2. defines "reasonable effort" as "an earnest and conscientious effort to take good faith steps to provide the services ordered by the court which takes into consideration the characteristics of the parent or child . . ., the level of cooperation of the parent. . . and other relevant circumstances of the case." The trial court found St. Croix County "did make reasonable efforts to provide services ordered by the court." There is credible evidence both in the testimony at the fact-finding hearing in this case and in the CHIPS file to support this element.
¶ 32. Dina Williams testified that she is employed by St. Croix County as a child protection social worker and worked with Juanita since Matthew was initially removed from the home when he was eight days old. Williams explained the efforts St. Croix County made to provide services to Juanita:
We've had a coordinated family services team, a community support team. Juanita's had an individual therapist, three different individual therapists at minimum. She's had a mental health worker, a psychiatrist that monitors her medications. We have provided respite services, transportation in way of — whether it be a gas card or taking her to and from places if needed, as well as for Matthew. There's personal care workers for both Juanita and for John. Again, the Birth to 3, early Head Start. He's had early childhood. Now he's in the 4K and preschool program.
Williams testified that since Matthew was removed in 2011, Juanita received twice-a-week and then three-times-a-week supervised visits from St. Croix County employees who transported Matthew to Juanita's home, offered parenting and safety suggestions during the visits, and provided any other help Juanita needed. *195 One of those employees, Ann Larson, a program aide at St. Croix County Family and Children's Services Department, testified that she tried to help Juanita learn better parenting skills by making suggestions with respect to proper food portions, talking to Juanita about safety concerns such as pill bottles within Matthew's reach, getting a lock on the gate in the yard, and fixing a large gap in the gate that Matthew could slip through and escape from the yard. Larson also testified she was there to provide resources for Juanita, but Juanita had not asked for any help to improve her parenting skills.
¶ 33. Dawn Noll, another St. Croix County program aide, testified that she worked with Juanita for seven years, offering parenting suggestions and providing transportation. After Matthew was removed from Juanita's home, Noll transported Matthew back and forth for weekly supervised visits with Juanita, and helped Juanita with parenting. Juanita testified she had a personal care worker assigned by the County who came two hours a day on Monday, Tuesday, Thursday, Friday and every other Saturday to help Juanita bathe and do household chores. Williams testified: "We have exhausted all services that we can possibly think of or that are available to us or to the family." Collectively, this testimony is sufficient to demonstrate that St. Croix County made reasonable efforts to provide services to Juanita.
| 34. Third, it is not disputed that Matthew was outside his home for more than six months. He was removed in July 2011 and never returned. The TPR petition was filed in June 2013. Matthew was outside the parental home for much longer than the required "cumulative period of six months."
*196 1 35. Fourth, there is credible evidence establishing Juanita's failure to meet the conditions necessary for Matthew's safe return to Juanita's home. The circuit court imposed 14 conditions:
(1) Juanita shall demonstrate the ability to supervise Matthew at all times.
(2) Juanita shall demonstrate the ability to provide, enforce and follow through with age appropriate discipline techniques with Matthew, when necessary.
(3) Juanita shall continue to learn parenting skills with the Parent Aide with St. Croix County Family & Children's and demonstrate the ability to use these skills.
(4) Juanita shall provide a structured routine, including but not limited to, meals, naps, bedtime, bathing, etc., for Matthew and follow through with this routine.
(5) Juanita shall keep her home free of all safety hazards that may endanger Matthew's health and/or safety, out of his reach including, but not limited to, all sharp objects, food that has been out longer than 2 hours, raw meat, heavy objects that are at risk of falling on or near Matthew, plastic bags, hangers, electric cords, electric outlets, and medications, and will demonstrate the ability to follow through.
(6) Juanita shall learn and practice basic housekeeping skills and basic home management skills which will also help in keeping the home free from safety hazards.
(7) Juanita shall demonstrate the ability to keep Matthew safe while playing outside by following *197 him where he is playing, holding his hand when walking to different areas and staying within 10 feet or less of him in non-enclosed settings.
(8) Juanita shall follow through with Birth to 3, Early Head Start and Speech Therapy recommendations when it comes to teaching Matthew verbal skills and having Matthew use his words to enhance his speech and communications skills. Juanita will demonstrate this ability without the assistance, guidance or support of other individuals.
(9) Juanita shall follow through with all recommendations made by her physicians when it pertains to her physical health and well-being. Juanita shall follow through with basic hygiene and self-care techniques to improve overall basic functioning and health.
(10) Juanita shall sign any and all releases deemed necessary and appropriate by the Department. This includes releases to be signed for the social Worker to discuss Juanita's health and well-being with her various health care providers. These will be signed at the time requested. If a request is deemed by Anita to be unreasonable the court shall be notified for a review hearing to be scheduled as soon as possible.
(11) Juanita shall not have any other individuals living with her (aside from her eldest son, John or her sister, Julie) without permission of the social worker and GAL.
(12) Warnings for Termination of Parental Rights shall be administered to Juanita.
(13) Juanita shall meet with the assigned social worker as deemed necessary and appropriate and will also acknowledge unannounced home visits.
*198 (14) In all other respects, the current CHIPS Court Order recommendations are still in effect and will continue to be followed.
f 36. Although we agree with Juanita that she was able to meet some of these conditions, the record contains credible evidence establishing that she failed to meet all of them. Williams testified Juanita attempted to meet the conditions for return, but "she's not able to complete all of them on a consistent basis." Williams explained:
• Juanita "has not demonstrated the ability to supervise Matthew at all times without the assistance of others. She has not been able to demonstrate the ability to provide, enforce, and follow through with age-appropriate discipline techniques with — at all times on her own without assistance. She does at times, but not always." Juanita's focus is frequently on arguing with her older son and "Matthew is often just lost in the shuffle" leaving Matthew unsupervised.
• Juanita's parenting skills have improved, but she does not have "the ability to use these skills" "on a consistent and ongoing basis."
• Juanita typically does not have a structured plan for the visits.
• Juanita's ability to make her home safe has improved, "but there continues to be incidents where, again, medications have been left out. This is something I have repeatedly talked to Juanita about." When playing outside, "the gate [is] not properly latched, if latched at all."
• With regard to the condition to keep a clean home, Juanita cannot do this on a consistent basis. "She needs reminders" "continuous reminders on [how] *199 to keep the house clean." The floor was "filthy," there were dirty dishes "from last night's meal still out on the counter, food, dishes in the living room," dirty laundry, and the bathroom was so dirty Matthew did not want to use it.
• Juanita is "often sitting when [Matthew's] off playing" and not within the ten-feet required by the conditions to keep him safe.
• Juanita keeps up with the early education and speech requirements but only because she is reminded to do so. Once reminded, Juanita will "make the effort to do it for a short period of time, but it doesn't continue as an ongoing basis."
• Juanita has rescinded all of her medical releases and will not allow any contact with her personal physicians or her "protective payee in regards to her financial situation and whether or not she is able to financially support herself and her children."
Williams' testimony provides credible evidence to establish Juanita's failure to meet the conditions.
¶ 37. There was also credible evidence demonstrating a substantial likelihood that Juanita would not meet the imposed conditions within the nine-month period following the fact-finding hearing. Williams testified that Juanita would not be able to comply with the conditions for return within the nine months following the hearing and that: "We have exhausted all services that we can possibly think of or that are available to us or to the family." St. Croix County Department of Social Services worked with Juanita since Matthew was eight days old. It provided her with significant support for years, yet Juanita could not consistently demonstrate an ability to prop *200 erly supervise Matthew or maintain a safe home for Matthew. Williams testified that Juanita would be able to exhibit the parenting skills she had been taught for at most one month "before she goes back to the old behaviors." There was nothing to show that Juanita could accomplish in another nine months what she was unable to do in the prior four and a half years. Thus, credible evidence supports this element.
III. CONCLUSION
f 38. We hold that the notice Juanita received satisfied the statutory notice element of a TPR action grounded in continuing CHIPS set forth in Wis. Stat. § 48.415(2). The notice required under Wis. Stat. § 48.356(2)(a)l. was satisfied with the written October 11, 2011 order. In a TPR case based on the continuing CHIPS ground, Wisconsin Stat. § 48.415(2) does not require proof that notice was given in every CHIPS order removing a child from the home or extension thereof; it also does not require proof that notice was in the last CHIPS order. Rather, it requires proof that one or more of the CHIPS orders removing a child from the home, or extension thereof, contain the written notice required under § 48.356(2).
¶ 39. We further hold that Steven H. did not establish an unequivocal "last order, plus six-months rule." Wisconsin Stat. § 48.415(2) does not use the term last order; rather, the legislature chose to use the phrase "one or more." Accordingly, if "one or more" of the CHIPS orders in a TPR case contains the statutorily prescribed written notice, regardless of whether it was the first, last, or any order in between, such notice satisfies the phrase "one or more." Likewise, the statutes do not require that six months must pass after the last CHIPS order before a TPR petition can be filed. *201 Rather, the relevant statute requires proof that a child was "outside the home for a cumulative total period of 6 months or longer." Wis. Stat. § 48.415(2)(a)3. We do not overrule Steven H. It remains good law except that we withdraw our conflicting sentence in paragraph 3 and clarify the last sentence in paragraph 31. See supra ¶ 2, ¶ 4 nn.3-4, & ¶¶ 18-25, 1 27.
f 40. We also hold that the record contains credible evidence sufficient to establish continuing CHIPS as a ground for terminating Juanita's parental rights. The record contains credible evidence showing: Matthew was adjudged CHIPS and placed outside Juanita's home pursuant to one or more CHIPS orders containing the statutorily prescribed written notice; St. Croix County made reasonable efforts to provide services to Juanita; Matthew resided outside of Juanita's home for longer than six months; Juanita failed to meet all of the conditions required for his return; and there was a substantial likelihood that Juanita would not meet those conditions within the nine months following the fact-finding hearing. Accordingly, we reverse the court of appeals' decision and affirm the circuit court's order terminating Juanita's parental rights to Matthew.
By the Court. — The decision of the court of appeals is reversed.

 All references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated. We cite to the most recent version of the statutes because no pertinent changes have been made.

 St. Croix County's termination of parental rights petition also included Matthew's father, Michael D., but Michael D. did not contest the petition.

 We withdraw this sentence: "We conclude that Wis. Stat. §§ 48.356(2) and 48.415(2) require that the last order *176 specified in § 48.356(2) placing a child outside the home, which must be issued at least six months before the filing of the petition to terminate parental rights, must contain the written notice prescribed by § 48.356(2)." Waukesha Cnty. v. Steven H., 2000 WI 28, ¶ 3, 233 Wis. 2d 344, 607 N.W.2d 607.

 The last sentence in paragraph 31 of Steven H. states: "Under § 48.415(2) the parents will be given adequate notice of the conditions for return and time to make any necessary changes to forestall the termination of parental rights if the last order issued at least six months before the filing of the petition involuntarily terminating parental rights contains the written notice." Steven H., 233 Wis. 2d 344, ¶ 31.

 St. Croix Cnty. DHHS v. Michael D., No. 2014AJP2431, unpublished slip op. (Wis. Ct. App. Jan. 16, 2015).

 The Honorable Edward F. Vlack presiding.

 In her brief, Juanita emphasizes the numerous written orders in this case: "There were 27 written orders in Matthew's CHIPS case[.]" We note that only 4 of the 27 written orders were CHIPS orders requiring written notice under Wis. Stat. § 48.356(2). Juanita also emphasizes that there were ten CHIPS court hearings in this case. We note that seven of those ten hearings required oral TPR warnings under Wis. Stat. § 48.356(1). Juanita received oral warnings at three of the seven hearings. The deficiencies of these notices and warnings under § 48.356 in Matthew's CHIPS case do not affect our holding that Juanita received sufficient notice in this TPR case because the TPR statute based on continuing CHIPS grounds requires proof only that the written notice under § 48.356(2) be given in one or more of the CHIPS orders.

 We are confident that applying the plain language of Wis. Stat. § 48.415(2) will not result in our circuit courts ignoring the notice requirement in CHIPS cases under Wis. Stat. § 48.356. Based on Wis. Stat. § 48.356(2)'s requirement that "any written order which places a child.. . outside the home . . . shall notify the parent or parents" of potential TPR grounds and conditions necessary for a child to be returned to the home, parental rights and notice requirements will not be diluted by our decision in this case.

 We also note that in addition to the one written notice, Juanita also received three oral warnings from the circuit court at three separate hearings: October 5, 2011, December 12, 2011, and September 6, 2012 (which was less than five months before the first petition to terminate was filed). Further, Juanita had just a few months earlier gone through a separate TPR for her other son, Henry, where her parental rights were terminated; moreover, Juanita was represented by counsel throughout all proceedings. The circuit court made a specific factual finding that despite the non-compliant September 11, 2012 order, Juanita did in fact receive sufficient notice and understood both the conditions necessary for return and the consequences for failing to meet those conditions. The record demonstrates Juanita had adequate notice that her parental rights to Matthew were in jeopardy.
Further, we are not persuaded by Juanita's contention she was confused. The circuit court found that Juanita was not confused, and we see nothing to suggest that finding was clearly erroneous.

 Although sufficiency of the evidence was not raised in the petition for review, we elect to address it in the interest of efficiency. See State v. Johnson, 153 Wis. 2d 121, 126, 449 N.W.2d 845 (1990)(When decision on "issue for which the court accepted the petition for review" results in need to decide a second issue, we may elect to decide the second issue.); Chevron Chem. Co. v. Deloitte & Touche, 176 Wis. 2d 935, 945, 501 N.W.2d 15 (1993)(" [OJnce a case is before us, we have discretion to review any substantial and compelling issue the case presents.").