COURT OF APPEALS
DECISION
DATED AND FILED

September 27, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP531**

Cir. Ct. No. 2019TP27

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

IN RE THE TERMINATION OF PARENTAL RIGHTS TO M. Z.,
A PERSON UNDER THE AGE OF 18:

BROWN COUNTY DEPARTMENT OF HUMAN SERVICES,

   PETITIONER-RESPONDENT,

 V.

K. Y. T.,

   RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Brown County: TIMOTHY A. HINKFUSS, Judge. *Affirmed.*

¶1     GILL, J.[1]  Kane[2] appeals from an order terminating his parental rights (TPR) to his daughter, Millie.[3]  Kane contends that the Brown County Department of Human Services ("Department") failed to prove by clear and convincing evidence that there was any ground to find Kane an unfit parent.  Kane also claims the circuit court erroneously exercised its discretion by deciding that the termination of his parental rights was in Millie's best interest.

¶2     In particular, Kane argues that there was insufficient evidence for the jury to find, under either of the statutory abandonment grounds, that Kane had abandoned Millie, because he did attempt to have contact with Millie and he was moved around between various jails and prisons, which hampered his ability to regularly communicate with Millie.  Regarding the jury's conclusion that there were grounds to find that Kane failed to assume parental responsibility, Kane argues that the evidence was insufficient because: (1) he expressed concerns regarding Millie to his case worker; and (2) he attended parenting classes in an attempt to better care for his child.  Finally, Kane summarily claims that the circuit court erroneously exercised its discretion when weighing the appropriate factors in

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2]  For ease of reading, we refer to the appellant and the child in this confidential matter using pseudonyms, rather than their initials.

[3]  Cases appealed under WIS. STAT. RULE 809.107 are "given preference and shall be taken in an order that ensures that a decision is issued within 30 days after the filing of the appellant's reply."  See RULE 809.107(6)(e).  Conflicts in this court's calendar have resulted in a delay.  It is therefore necessary for this court to sua sponte extend the deadline for a decision in this case.  See WIS. STAT. RULE 809.82(2)(a); *Rhonda R.D. v. Franklin R.D.*, 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995).  Accordingly, we extend our deadline to the date this decision is issued.

determining whether it was in Millie's best interest to terminate Kane's parental rights.

¶3 We conclude that the Department presented sufficient credible evidence at trial to support the jury's verdict finding grounds to terminate Kane's parental rights. We further conclude that the circuit court did not erroneously exercise its discretion by concluding that terminating Kane's parental rights was in Millie's best interest. Consequently, we affirm the TPR order.

## BACKGROUND

¶4 Millie was born in 2013. In April 2017, Millie was placed outside of her parents' home with relatives pursuant to a child in need of protection or services (CHIPS) dispositional order. The order listed conditions of supervision for each parent, and it contained the statutorily required notice concerning the grounds to terminate parental rights. On August 8, 2017, Kane was arrested and detained at the Brown County Jail. Between the entry of the CHIPS order and his arrest, Kane visited Millie a "couple time[s]," coordinating these visits by speaking to his relatives, with whom Millie was staying. Kane's arrest was based on a number of drug offenses, and he was eventually convicted and sentenced to five years in prison. Kane remained incarcerated until December 2020, and he resided at several different jails and prisons during his incarceration.

¶5 On October 17, 2019, while Kane was in custody, the Department filed a TPR petition. The petition sought to terminate Kane's parental rights on four grounds: (1) abandonment (three months) under WIS. STAT. § 48.15(1)(a)2.; (2) abandonment (six months) under § 48.415(1)(a)3.; (3) continuing CHIPS under

3

§ 48.415(2); and (4) failure to assume parental responsibility under § 48.415(6).[4] Kane contested the TPR petition and requested a jury trial.

¶6 A three-day jury trial was held in early September 2021. The evidence presented consisted of seventy-three exhibits and testimony from three Department social workers, an officer from the Brown County Jail, Millie's paternal grandfather, and Kane. At the end of the trial, the jury found that Kane had abandoned Millie under both WIS. STAT. § 48.415(1)(a)2. and 3., and he had failed to assume parental responsibility under § 48.415(6).[5] The circuit court accepted the jury's verdicts and found Kane unfit as a parent under WIS. STAT. § 48.424(4).

¶7 In November 2021, the circuit court held a dispositional hearing to determine whether it was in Millie's best interest to terminate Kane's parental rights. The court later issued an oral ruling finding that terminating Kane's parental rights was in Millie's best interest. Kane now appeals.

### DISCUSSION

¶8 The "standard of review in a challenge to the sufficiency of the evidence is whether there is any credible evidence to sustain the verdict." *St. Croix Cnty. Dep't of Health and Hum. Servs. v. Michael D.*, 2016 WI 35, ¶29, 368 Wis. 2d 170, 880 N.W.2d 107. We "will sustain a jury verdict if there is any credible evidence to support it." *Morden v. Continental AG*, 2000 WI 51,

---

[4] The Department also petitioned to terminate the parental rights of Millie's mother. The mother's rights are not at issue in this appeal, and she has since passed away.

[5] On the third ground, continuing CHIPS, the jury declined to find grounds to terminate Kane's parental rights.

¶38, 235 Wis. 2d 325, 611 N.W.2d 659. "In applying this narrow standard of review, this court considers the evidence in a light most favorable to the jury's determination." *Id.*, ¶39. "[I]t is inappropriate for an appellate court to replace the trier of fact's overall evaluation of the evidence with its own." *State v. Smith*, 2012 WI 91, ¶33, 342 Wis. 2d 710, 817 N.W.2d 410 (citations omitted). "[A]lthough evidence may have presented competing factual inferences, the circuit court's findings are to be sustained if they do not go 'against the great weight and clear preponderance of the evidence.'" *Phelps v. Physicians Ins. Co. of Wis.*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615 (citation omitted). "Findings of fact shall not be set aside unless clearly erroneous." WIS. STAT. § 805.17 (2019-20). A finding of fact is clearly erroneous when it is against the great weight and clear preponderance of the evidence. *Phelps*, 319 Wis. 2d 1, ¶39.

¶9      Wisconsin has a two-part statutory procedure for an involuntary TPR. *Steven V. v. Kelley H.*, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856. First, a jury or the circuit court must determine whether grounds exist for the TPR. WIS. STAT. § 48.424(1)(a). "If grounds for the [TPR] are found by the [circuit] court or jury, the court *shall* find the parent unfit." Sec. 48.424(4) (emphasis added). "Once a basis for termination has been found by the jury and confirmed with a finding of unfitness by the court, the court must move to the second[ ]step." *Sheboygan Cnty. Dep't of Health and Hum. Servs. v. Julie A.B.*, 2002 WI 95, ¶37, 255 Wis. 2d 170, 648 N.W.2d 402.

¶10      The second step is the dispositional phase. *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶23, 246 Wis. 2d 1, 629 N.W.2d 768. During this phase, the circuit court primarily focuses on deciding "whether it is in the best interest of the child that the parent's rights be permanently extinguished." *State v. C.L.K.*, 2019 WI 14, ¶3, 385 Wis. 2d 418, 922 N.W.2d 807. "The determination of a child's best

interests in a termination proceeding depends on firsthand observation and experience with the persons involved and, therefore, is left to the discretion of the [circuit] court." *Gerald O. v. Cindy R.*, 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996). We "will uphold the discretionary decision of a circuit court as long as the circuit court's exercise of discretion was not erroneous." *Horizon Bank, Nat'l Ass'n v. Marshalls Point Retreat LLC*, 2018 WI 19, ¶29, 380 Wis. 2d 60, 908 N.W.2d 797.

## I.  Sufficiency of the evidence

¶11    In his appeal, Kane argues that there was insufficient evidence to support the jury's conclusions that he was unfit based upon abandonment under WIS. STAT. § 48.415(1)(a)—namely, abandonment for a three-month period, and abandonment for a six-month period. Kane further argues that the jury erred in determining that there was sufficient evidence to support a finding that Kane failed to assume parental responsibility for Millie.

### a.  Three-month abandonment

¶12    The three-month abandonment ground requires the petitioner to prove, by clear and convincing evidence, that: (1) the child was placed, or continued in a placement, outside the parent's home pursuant to a court order that contained the TPR notice required by law; and (2) the parent failed to visit or communicate with the child for a period of three months or longer. WIS JI—CHILDREN 313 (2019); WIS. STAT. § 48.415(1)(a)2. If the fact finder determines that both of these elements are satisfied, abandonment has been established unless the parent can show good cause for having failed to visit or communicate with the child during the relevant time period. WIS JI—CHILDREN 313 (2019); § 48.415(1)(c).

¶13    The jury found in this case that the Department established abandonment under the three-month statutory period. Notably, the jury found that Kane had good cause for failing to visit Millie. However, the jury did not find good cause for Kane's failure to communicate with Millie.

¶14    The record shows there was credible evidence to support the jury's finding of abandonment for the three-month statutory period. Millie was placed outside of her parents' home in April 2017. Evidence was introduced at trial that throughout his incarceration, Kane attempted to make over 3,405 phone calls, only two of which were to Millie's foster parents. Neither of the two calls were ever connected. Despite envelopes provided by the Department, Kane testified to writing Millie only a "couple time[s]," over an eighteen-month period. Before being incarcerated, and after Millie was removed from Kane's care, there were minimal visits between Kane and Millie. Additionally, during his incarceration, Kane had only two visits with Millie.

¶15    In his briefing, Kane focuses on those efforts he has made to communicate with Millie, but he fails to show how the jury's findings regarding abandonment was clearly erroneous. Kane argues, for instance, that he wrote some letters to Millie and called her whenever he could. Nevertheless, the jury could reasonably find that Kane's efforts were too little over a prolonged period of time. Additionally, while Kane repeatedly argues "that he expressed interest in visiting and communicating with [Millie]," the statutory language for abandonment clearly distinguishes "instances where communication is '*with* the child' from instances where communication is '*about* the child.'" ***Dane Cnty. Dep't of Hum. Servs. v. Hershula B.***, No. 2014AP2076, unpublished slip op. ¶21

(WI App Feb. 26, 2015) (emphasis added; citations omitted).[6] While Kane refers to multiple instances where he had spoken about Millie to caseworkers and Millie's foster parents, the record reveals that he spoke with Millie on only a few occasions.

¶16    Reviewing all the evidence, there is credible evidence in this case to sustain the three-month abandonment verdict. *See **Michael D.***, 368 Wis. 2d 170, ¶29. The circuit court, as it was mandated to do under WIS. STAT. § 41.424(4), correctly found Kane unfit as a parent, in part, due to the jury's finding of abandonment on the three-month abandonment ground.

### b. Sixth-month abandonment

¶17    The six-month abandonment ground requires the petitioner to prove, by clear and convincing evidence, that:  (1) the child was left by the parent with a relative or other person; (2) the parent knew, or could have discovered, the child's whereabouts; and (3) the parent failed to visit or communicate with the child for a period of six months or longer.  WIS JI—CHILDREN 314 (2019); WIS. STAT. § 48.415(1)(a)3.  Again, if the fact finder determines that these elements are satisfied, abandonment has been established unless the parent can show good cause for having failed to visit or communicate with the child.  WIS JI—CHILDREN 314 (2019); § 48.415(1)(c).

¶18    The jury found that the Department established abandonment under the six-month statutory period.  The Department established that Millie has been

---

[6] Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

out of Kane's care since April 2017. Kane was aware of where Millie resided and had her foster parents' phone number. Kane testified he was aware of Millie's location since the entry of the April 2017 dispositional order. As stated earlier, Kane infrequently called, wrote only a few letters to her, and has minimally visited her since she was removed from her parents' home. Any contact between Kane and Millie was minimal and incidental. While some contact occurred between Kane and Millie during the relevant time periods (such as being in the same court room and relatives bringing Millie to visit Kane in prison), contact of this type is considered incidental. Incidental contact is defined as "insignificant contact or contact which occurred merely by chance." WIS JI—CHILDREN 313 (2019). Incidental contact does not prevent a jury from finding that a parent failed to visit or communicate. *Id.*

¶19 Regarding the jury's findings on abandonment, Kane seemingly asks this court to give greater weight to his testimony regarding his efforts to communicate with Millie than the jury did at trial. However, we will "not reweigh the evidence or reassess the witnesses' credibility." *Dickman v. Vollmer*, 2007 WI App 141, ¶14, 303 Wis. 2d 241, 736 N.W.2d 202. When reviewing a jury's verdict, courts will "search for credible evidence that will sustain the verdict, not for evidence to sustain a verdict the jury could have but did not reach." *K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 2007 WI 70, ¶38, 301 Wis. 2d

9

109, 732 N.W.2d 792 (citing *Meurer v. ITT Gen. Controls*, 90 Wis. 2d 438, 450, 280 N.W.2d 156 (1979)).[7]

¶20 Overall, Kane minimally attempted to contact Millie and had only incidental contact with her after the CHIPS dispositional order was entered. Accordingly, there is credible evidence in this case to sustain the six-month abandonment verdict. *See Michael D.*, 368 Wis. 2d 170, ¶29. As a result of the jury's finding of abandonment on the six-month abandonment ground, the circuit court correctly found Kane unfit as a parent as it was mandated to do under WIS. STAT. § 48.424(4).

### c. Failure to assume parental responsibility

¶21 The jury also determined that Kane had failed to assume parental responsibility pursuant to WIS. STAT. § 48.415(6)(a). Failure to assume parental responsibility is established "by proving that the parent … [has] not had a substantial parental relationship with the child." *Id.* A substantial parental relationship is defined as "the acceptance and exercise of significant responsibility for the daily supervision, education, protection and care of the child." Sec. 48.415(6)(b). A nonexclusive list of factors that a court may consider in determining whether the parent has a substantial parental relationship includes: (1) "whether the person has expressed concern for or interest in the

---

[7] In further support of his arguments against a finding of abandonment, Kane asserts that the failures by the Department "thwarted his efforts to maintain contact and to have an ongoing relationship with his child." Kane, however, does not develop this argument, nor does he explain what services the Department was obligated to provide or how the provision of those services would have resulted in him spending more time with Millie. As the argument is undeveloped, we decline to address it. *See M.C.I., Inc. v. Elbin*, 146 Wis. 2d 239, 244-45, 430 N.W.2d 366 (Ct. App. 1988).

support, care or well-being of the child[;]" and (2) "whether the person has neglected or refused to provide care or support for the child." *Id.* Parental responsibility is assessed by reviewing the circumstances throughout the child's entire life. WIS JI—CHILDREN 346B (2018); *Tammy W-G. v. Jacob T.*, 2011 WI 30, ¶35, 333 Wis. 2d 273, 797 N.W.2d 854 (stating a "fact-finder … is permitted to look at the child's life as a whole, and to decide whether, given all the facts, there has been an assumption of parental responsibility").

¶22     Challenging the jury's finding that he failed to assume parental responsibility, Kane argues that he wrote letters to the Department expressing concern about Millie, he had visits with Millie while incarcerated, and he tried to address child support issues. Similar to his argument regarding abandonment, Kane does not show how this finding is unsupported by the evidence. Instead, Kane simply contends that his testimony and evidence should be given more weight than other evidence in the case.

¶23     Despite Kane's contentions, the record contains credible evidence supporting the jury's verdict for failure to assume parental responsibility. The evidence showed that Kane has been in and out of incarceration since the beginning of Millie's life. Specifically, in 2015, Kane was incarcerated for over five months and was then incarcerated again in August 2016 for over three months. Starting in August 2017, Kane was incarcerated for over three years. Kane testified that he was unable to provide direct care for Millie during those times. While "[i]ncarceration of a parent does not in itself establish failure to assume parental responsibility," a jury is allowed to weigh the evidence and find that there was a failure to assume parental responsibility during periods of incarceration. WIS JI—CHILDREN 346B (2018); *L.K. v. B.B.*, 113 Wis. 2d 429, 439, 335 N.W.2d 846 (1983) (finding when a parent is incarcerated does not

preclude the possibility of a TPR). Additionally, Kane tried to pause his child support obligations while he was incarcerated. Furthermore, over the course of his separation from Millie, Kane has had minimal visits and phone calls with her, and he has written her only a couple of letters. This evidence was sufficient to support the jury's verdict that Kane failed to assume parental responsibility for Millie.

## II. Best interest of the child

¶24    Kane also argues that the circuit court erred by concluding that the termination of Kane's parental rights was in Millie's best interest. To determine whether a TPR is in the best interest of the child under WIS. STAT. § 48.426(3), the court must consider the following:

> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d) The wishes of the child.
>
> (e) The duration of the separation of the parent from the child.
>
> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

Sec. 48.426(3).

¶25    Kane's sole argument in this regard is that the circuit court erroneously exercised its discretion because it did not give enough weight to his

testimony. To the contrary, the court did weigh Kane's testimony and balanced each of the six factors in WIS. STAT. § 48.426(3).

¶26 Weighing the first factor, the circuit court found that Millie's current foster parents had expressed an interest in adoption. *See id.* If for whatever reason this interest ceased, the court found it was likely an alternative adoptive resource could be located. Analyzing the second factor, the court commented on both Millie's age and her good health. *See id.*

¶27 Next, giving significant weight to the third factor, the court described Kane as "inconsistent" and stated that Kane "[s]ometimes was hot, sometimes he was cold" in his behavior toward Millie. *See id.* As also relevant to the third factor, the court found insufficient evidence of any substantial relationship between Millie and her paternal grandparents.

¶28 Under the fourth factor, the circuit court found that due to Millie's young age, her wishes had been expressed by her guardian ad litem during the proceedings. *See id.* In weighing this factor, the court further found that Millie views her current foster home as her actual home and refers to her foster parents as "mom and dad."

¶29 Considering the fifth factor, the circuit court found that Kane and Millie have been separated since at least 2017. *See id.* The court stated it was likely this time period was even longer, due to there being insufficient evidence that Kane was involved in parenting Millie in any substantial way prior to his long-term incarceration. Lastly, upon weighing the sixth factor, the court determined that terminating Kane's parental rights would allow Millie to enter into a more permanent and stable family relationship, which already existed with her current foster parents. *See id.*

¶30    The record shows that the circuit court meticulously considered and weighed each of the factors set forth in WIS. STAT. § 48.426(3).   The court's analysis balanced the competing testimonies, giving the weight to Kane's testimony that it deemed appropriate.   The court reasonably concluded that termination of Kane's parental rights was in Millie's best interest.  Kane has not demonstrated that the court erroneously exercised its discretion in that regard. Rather, the court correctly balanced the proper statutory factors.   Therefore, the court's conclusion that termination of Kane's parental rights was in the best interest of Millie was not erroneous.

*By the Court.*—Order affirmed.

This opinion will not be published.   *See* WIS. STAT. RULE 809.23(1)(b)4.