**COURT OF APPEALS
DECISION
DATED AND FILED**

**September 13, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2022AP209**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020TP247

**IN COURT OF APPEALS
DISTRICT I**

IN THE INTEREST OF A.C., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

L.N.H.,

      RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Affirmed.*

¶1    WHITE, J.[1]  Lucy appeals the order terminating her parental rights to her son, Anthony, and the order denying her postdisposition motion without a hearing.[2]  Lucy argues that the circuit court erred when it did not allow her to withdraw her voluntary consent to the termination of parental rights (TPR) petition.  She argues her plea was not entered knowingly, intelligently, and voluntarily because she was unaware of the consequences of her plea.  Upon review, we affirm the circuit court.

## BACKGROUND

¶2    In November 2020, the State filed a petition to terminate Lucy's parental rights to Anthony.  As alleged in the petition, the Division of Milwaukee Child Protective Services (DMCPS) received a referral that Lucy had given birth to Anthony in March 2018; she previously had a child removed by DMCPS. Anthony was placed in newborn intensive care for severe drug withdrawal symptoms, although he tested negative for drugs in his system.  The dispositional order was entered on August 30, 2018, and Anthony remained in an out-of-home foster placement after that time.  The petition alleged continuing CHIPS[3] and failure to assume parental responsibility as grounds for the TPR, pursuant to WIS. STAT. § 48.415(2) and (6).  The petition alleged that Lucy had failed to comply

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2]  To protect confidentiality and for ease of reading, we refer to the family involved in this case by pseudonyms.  We refer to L.N.H. as "Lucy"; her son A.C., as "Anthony"; A.C.'s father, as "Adam"; and S.C., L.N.H.'s cousin and Anthony's foster parent, as "Sophia."  *See* WIS. STAT. RULE 809.19(1)(g).

[3]  "CHIPS is the commonly used acronym to denote the phrase 'child in need of protection or services' as used in the Wisconsin Children's Code, chapter 48, Stats." *Marinette Cnty. v. Tammy C.*, 219 Wis. 2d 206, 209 n.1, 579 N.W.2d 635 (1998).

with the conditions of the dispositional order. Lucy was required to control her drug and alcohol addiction, as well as control her mental health for panic disorder, social anxiety, and ADHD. Further, she was required to commit no crimes and resolve her criminal cases, which included charges for a hit-and-run, child neglect, operating a vehicle with a revoked driver's license, and operating while intoxicated. Additionally, the conditions required her to keep her child safe; she had a history of domestic violence with Adam and a no-contact order with him.

¶3 The TPR proceedings were held over Zoom video conferencing because of the Covid-19 pandemic. At the final pretrial on August 13, 2021, Lucy did not appear and the court granted the State's motion for default as to the TPR petition on the grounds component of the TPR proceedings because of her nonappearance at the hearing, which was at least the second hearing she missed, despite being told she needed to attend all hearings. Further, Lucy's trial counsel moved to withdraw and informed the court that communication had broken down between herself and Lucy. The court held counsel's motion under advisement.

¶4 The following week on August 16, 2021, at the scheduled trial date on the grounds for the TPR petition regarding Adam's parental rights, Lucy appeared and her trial counsel informed the court that Lucy was contemplating a voluntary consent to the TPR. First, Adam decided to plead no contest to the grounds and to not have a trial; after a colloquy with Adam, the court accepted Adam's no contest plea and found him an unfit parent.

¶5 The court then turned to Lucy's request to voluntarily consent to the TPR. It engaged in a colloquy with Lucy and reminded her that if she didn't "understand something I say, please say, Judge, I don't understand what you just said and then I will explain myself, okay?" Lucy replied, "Yes, your Honor." The

3

court ascertained Lucy's age—forty-three—and that she had an associate's degree, and that she was "able to read and write and understand the English language." Further, the court ensured she had received a copy of the November 2020 TPR petition, reviewed it with her attorney, and understood its contents. The court asked Lucy if she felt "comfortable and confident" that she understood what was happening in this court? Lucy replied, "Yes, your Honor." The court acknowledged "this is a very emotional decision" and that if Lucy wanted a "time out" at any point, she should ask.

¶6 The circuit court reviewed the rights that Lucy would be giving up if she consented to the termination, which included the "right to fight against the termination of parental rights at a trial"; the "right to testify yourself and with the help of your lawyer call other witnesses to testify about the facts in the petition"; the "right to force the state or the petitioner to prove the facts in the petition that they are true or substantially true to a reasonable certainty by clear, satisfactory and convincing evidence"; and the "right to have a jury decide whether [the State] did or did not meet this burden of proof[.]"

¶7 The circuit court explained the consequences of termination and questioned Lucy if she understood she was giving up these rights:

> [Y]our right to have the child live with you and provide for the child's daily needs, food, clothing, shelter, guardianship, that is the right and responsibility to make decisions that effect your child's long-term welfare, education, medical care and religious upbringing, visitation and communication, you are forever surrendering your right to any legal recognized right to visit, communicate or force others to communicate with you about how your child is doing.

Addressing outcomes, the court stated

> [THE COURT:] Now, [Sophia] has been identified as the adoptive resource. I can't promise you that she will adopt or some other alternative, guardianship of your child but if she did not adopt and she did not become the guardian, I would have to find someone else to become the guardian of the child. Do you understand?
>
> [LUCY:] Yes, your Honor.

Then, the court asked Lucy to tell him "why you have decided to voluntarily consent to your parental rights being terminated?" Lucy replied, "Because I really don't believe that I am going to be able to and he is better off being with my cousin. She takes good care of him and he is happy and they love him very much and I just want what is best for him." On the topic of why Lucy wanted Sophia to have the guardianship, Lucy stated that she wanted to have Anthony "around his brothers and sisters" that are in West Virginia, where she and some of her extended family and some of Adam's extended family lives. She stated that she had seven children in total, with her oldest, age twenty-five, living with her.

¶8      The court informed Lucy of her appeal rights, and informed her that "your right to appeal is not [thirty] days for you to change your mind or think about your decision." The court informed her that the decision was "permanent" if accepted and "pretty much etched in stone unless" Lucy could show that "something went wrong in court today[.]" Lucy would need to comply with the appeal procedure and "convince the appeals court that something significantly went wrong and that occurred in these proceedings." The court accepted Lucy's voluntary consent to termination.

¶9      Two days later, on August 18, 2021, the parties returned to court and the court wanted to know the status of the guardianship petition explaining it

would stay with this court, even if it were separately filed. The court sought opinions on the guardianship. Lucy's trial counsel stated to the court and parties:

> [I]n terms of my previous conversations with [Lucy] she strongly feels whether it's a guardianship or whether it's a termination that the child should remain placed with the relatives in West Virginia. That is her position and it's her position and she understands that her relationship with the adoptive—with the foster placement is rather strained and she would like to get that in balance with that relationship so her position would be either guardianship or adoption, that would be fine with her as long as the child remains in West Virginia.

¶10    The GAL and the ongoing case manager both expressed that Adam was involved and wanted to stay involved in Anthony's life. Adam's counsel argued that the court should not terminate Adam's parental rights. The court summed up that Lucy "voluntarily consented to have her parental rights terminated and that leaves one parent in place, [Adam,] and if [Adam and Sophia] come to an agreement on how they want to proceed, I don't want to get in the way of that…." Ultimately all parties agreed to guardianship, although Sophia expressed a preference for adoption.

¶11    Lucy did not appear at the next hearing on November 3, 2021. The court and Lucy's counsel discussed the breakdown in communication between Lucy and counsel. The court also asked about a notice of intent to appeal Lucy filed in August. The court asked what Lucy was appealing, as there was no final order. Lucy's counsel stated she did not know. The court found Lucy's nonappearance at the hearing to be egregious and without excuse, and defaulted her on the dispositional phase, the second stage in a voluntary consent to TPR under WIS. STAT. § 48.41(1).

6

¶12 The State moved forward with the disposition of Lucy's rights. The ongoing case manager testified about Anthony's health, time in care, and placement with Sophia since November 2019. The ongoing case manager testified that Anthony is aware that Lucy is "someone important in his life" but he "doesn't look to her for his basic needs. He doesn't call her mom." Lucy has had virtual or in-person visits over the years, with her missing visits for some periods of time and DMCPS having concerns about active alcohol abuse and her mental state. She testified that Lucy's last in-person visitation with Anthony was in summer 2021.

¶13 The ongoing case manager testified that there was a trial reunification with Lucy when Anthony was very small, but it ended because Lucy reported ongoing domestic violence between her and Adam. She wanted to move to West Virginia and DMCPS attempted to support her, but she was revoked on her probation for drinking alcohol. Anthony (and an older sister) were returned to Wisconsin; DMCPS tried reunification with Adam with a safety plan that he was not allowed to have any direct contact with Lucy. However, during a "pop-in" visit, a DMCPS case worker found Lucy and Adam together. She testified that Lucy and Adam had an "on again, off again" type relationship, which they were not honest about with DMCPS over the years.

¶14 The circuit court then made findings of fact reviewing the six required statutory considerations under WIS. STAT. § 48.426(3).[4]

---

[4] By statute, in making a decision on the disposition of a TPR petition, the prevailing factor is the best interests of the child. In doing so, the circuit court must consider, but is not limited to, the following factors:

(a) The likelihood of the child's adoption after termination.

(continued)

There's nothing about the age or health of the child that would be a barrier to either adoption or guardianship.

The child was removed from the parents' home almost over two years ago. The child … does not have a substantial parental relationship with his mother. The child knows who his father is, at least his father visits with him twice a week.

The child does not have a substantial parental relationship with any other family members or siblings, and it will not be harmful to this child to sever the legal relationships that he has with his mother or any siblings or any other maternal family members.

The child is too young to tell you what his wishes are regarding adoption or guardianship.

The child has been separated from his mother and father and placed in foster care for over two years.

If I grant the petition for termination of parental rights, the child will be able to enter into a more permanent family relationship, that relationship with his mother's rights being terminated and guardianship being placed with [Sophia] and leaving [Adam's] parental relationship—sorry—leaving the relationship with the child intact.

---

(b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.

(c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.

(d) The wishes of the child.

(e) The duration of the separation of the parent from the child.

(f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

WIS. STAT. § 48.426(3).

> Considering this evidence in light of the best interests standard, the court concludes as a matter of law that a termination of parental rights as to [Lucy] has been proven by clear and convincing and satisfactory evidence and that it is in the best interests of the child that [Lucy's] parental rights are terminated.

On November 9, 2021, the order terminating Lucy's parental rights was signed by the court.

¶15 On January 14, 2022, the circuit court held a hearing on the State's guardianship petition. It approved naming Sophia as Anthony's guardian and decided it was not in Anthony's best interests to terminate Adam's parental rights.

¶16 Lucy appealed and in April 2022, this court, upon Lucy's motion, remanded the case to the circuit court to allow her to file a postdisposition motion seeking to vacate her consent to the TPR. Lucy moved to reopen the judgment pursuant to WIS. STAT. § 806.07(1)(h) because her consent was not knowingly or intelligently made. Lucy argued that at the time she entered consent to the voluntary TPR, she "did so with the knowledge and understanding that a guardianship petition would be filed by or on behalf of [Sophia], and if the guardianship went through, the State would dismiss its petition to terminate her parental rights." Lucy contended that she consented "with the knowledge and understanding that her parental rights would only be terminated if the father's parental rights were also terminated." Lucy "maintain[ed] that she did not know or understand that her rights could be terminated even if [Sophia] became [Anthony's] guardian, and/or if the father maintained his parental rights." Lucy contended that she did not "fully understand the possible outcomes and consequences of her consent to termination when she entered it."

¶17    The circuit court held a hearing on June 28, 2022.  The court reviewed the procedural history of the case, the guardianship being granted to Sophia, and the thorough colloquy it conducted with Lucy over the rights she was giving up if she voluntarily consented.  The court noted Lucy's assent to understanding and accepting each issue.  The court stated:

> Now, I do not remember there being any bargain between the [c]ourt and [Lucy] that her consent was not conditional in any way.  There was a conversation the [c]ourt had with [Lucy] about whether … it could be either a guardianship or an adoption.  There was no conversation that the [c]ourt had with [Lucy] as to whether or not it would only terminate her parental [] rights if it terminated the parental rights of the father.  I am not sure where that came from as far as her knowledge and understanding but that is not an understanding she had with the [c]ourt and I had the colloquy with her so it was not conditional and there was no bargaining between the [c]ourt and [Lucy] so if her reasoning is that I should vacate the judgment and order terminating her parental rights, I do not agree with that and I am doing so without a hearing because there is nothing— and the record speaks for itself as to what she wanted to do and what she did do and she was informed it would be almost irreversible unless she can demonstrate that something significantly went wrong during the hearing.  I couldn't find anything in the record that went significantly wrong.  She may not be happy with the outcome but there wasn't a bargain between the [c]ourt and [Lucy] or as I understand it, anyone else but that's my decision[.]

The court denied the motion to withdraw her voluntary consent without an evidentiary hearing.  Lucy appeals.

## DISCUSSION

¶18    Lucy renews her postdisposition motion arguments and seeks to withdraw her voluntary consent to the TPR because she argues it was not knowingly and intelligently made.  The State argues that the circuit court complied with the required colloquy to ensure Lucy's consent was knowing, intelligent and

voluntary. Further, the State and GAL assert that the circuit court did not err in exercising its discretion to deny the motion for plea withdrawal without an evidentiary hearing.

¶19 A parent may voluntarily consent to a TPR petition in accordance with WIS. STAT. § 48.41. The circuit court's determination that a parent's consent to TPR is voluntary and informed is a question of law we review independently. ***T.M.F. v. Children's Serv. Soc'y***, 112 Wis. 2d 180, 188, 332 N.W.2d 293 (1983). However, that legal conclusion is "derived from and intertwined with the [circuit] court's factual inquiry during which the [circuit] court has had the opportunity to question and observe the witnesses; the [circuit] court is thus better prepared to reach a just and accurate conclusion than is an appellate court." ***Id.*** Although the circuit court's decision is not controlling, it is given weight by this court. ***Id.***

¶20 Before accepting a parent's voluntary consent to TPR, the circuit court "must explain[] the effect of termination of parental rights" and have "questioned the parent … and [be] satisfied that the consent is informed and voluntary." WIS. STAT. § 48.41(2)(a). To ascertain whether consent is "voluntary and informed" the circuit court must consider the following on the record:

> 1. the extent of the parent's education and the parent's level of general comprehension;
>
> 2. the parent's understanding of the nature of the proceedings and the consequences of termination, including the finality of the parent's decision and the circuit court's order;
>
> 3. the parent's understanding of the role of the guardian ad litem (if the parent is a minor) and the parent's understanding of the right to retain counsel at the parent's expense;

4. the extent and nature of the parent's communication with the guardian ad litem, the social worker, or any other adviser;

5. whether any promises or threats have been made to the parent in connection with the termination of parental rights;

6. whether the parent is aware of the significant alternatives to termination and what those are.

*T.M.F.*, 112 Wis. 2d at 196-97. If the court is satisfied that the consent is voluntary and informed, then it "may proceed immediately to a disposition of the matter after considering the standard and factors specified in [WIS. STAT. §] 48.426." Sec. 48.41(1).

¶21 Lucy argues she was not aware of the consequences of her consent. In her affidavit accompanying her postdisposition motion, Lucy alleged that she believed that if the guardianship were granted, the TPR action would be dismissed and her parental rights would be maintained. The record reflects that after Lucy brought up her possible voluntary consent to the TPR during the court proceedings, no person, attorney, or judicial officer stated that Lucy's rights should be or would be maintained if a guardianship were granted. Her counsel relayed her position on multiple occasions—always focused on having Anthony stay in West Virginia. When the circuit court directly asked her about why she was voluntarily consenting, she stated that "I really don't believe that I am going to be able to and he is better off being with my cousin. She takes good care of him and he is happy and they love him very much and I just want what is best for him." She did not express that she wanted to retain her rights or that her consent was dependent or conditional on similar action taken for Adam.

¶22    In **T.M.F.**, our supreme court reversed a voluntary consent to a TPR because the record before it did not show that the mother's consent was voluntary and informed.  It considered the plea colloquy "cursory and perfunctory," noting:

> The record is replete with T.M.F.'s responses, consisting of a simple "U'm h'm" or "Yeah," to leading and complex questions asking whether T.M.F. understood the nature of the proceedings, the explanation of the alternatives available to her, and the explanation of the consequences of her consent, and whether she was ready to make a commitment to the court to give up her child.

**Id.**, 112 Wis. 2d at 189.  Our supreme court criticized the circuit court for not asking T.M.F. questions "which would have required her to explain in her own words what she understood and what her reasons were for terminating her parental rights."  **Id.** at 195.  Here, Lucy was asked a series of long questions regarding her rights and understanding, for which she gave short affirmative answers, but the circuit court did ask her to explain in her own words why she wanted to voluntarily consent to the TPR.  She gave a thorough answer and the court asked responsive follow-up questions.  The record reflects Lucy's strong concern that Anthony stay in West Virginia.  It does not show any expectation, request, or desire on Lucy's part that her rights would be maintained if the guardianship occurred or if Adam's rights were not terminated.  The record also supports the circuit court's assertion that it did not remember a "bargain" between it and Lucy that showed her consent was "conditional in any way."

¶23    Lucy concedes that the circuit court complied with the "basic information" required under Wisconsin law.  *See* **T.M.F.**, 112 Wis. 2d at 196-97.  She argues that the plea colloquy was not deficient, but that her mistaken understanding arose from her conversations with trial counsel and her

interpretation of the information received from trial counsel.[5] The State argues that Lucy has failed to alleged deficiencies in the plea colloquy and that there were no deficiencies in the plea colloquy. Therefore, it contends her motion fails.

¶24 To understand our standard of review, we turn to the general legal principles behind plea withdrawal, drawn from the criminal law context, but applied under similar reasoning in TPR cases. *Brown Cnty. v. Shannon R.*, 2005 WI 160, ¶59, 286 Wis. 2d 278, 706 N.W.2d 269 ("[T]ermination of parental rights proceedings deserve heightened protections because they implicate a parent's fundamental liberty interest."). "When a defendant seeks to withdraw a guilty plea after sentencing, [the defendant] must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in 'manifest injustice.'" *State v. Brown*, 2006 WI 100, ¶ 18, 293 Wis. 2d 594, 716 N.W.2d 906 (citation omitted). One way the defendant can show manifest injustice is to prove that the plea was not entered knowingly, intelligently, and voluntarily. *State v. Taylor*, 2013 WI 34, ¶24, 347 Wis. 2d 30, 829 N.W.2d 482. A defendant can show that a plea was not entered knowingly, intelligently, and voluntarily by alleging deficiencies in the plea colloquy by the circuit court failing to "fulfill the duties mandated in WIS. STAT. § 971.08 or under the *Bangert* line of cases[.]" *Taylor*, 347 Wis. 2d 30, ¶32. Alternately, "when the defendant alleges that some factor

---

[5] Lucy argues that under *State v. Jenkins*, 2007 WI 96, 303 Wis. 2d 157, 736 N.W.2d 24, matters outside of the plea colloquy can be considered in determining the voluntary consent of a plea. The State points out that *Jenkins* is a presentencing plea withdrawal case, which has not been applied to postdisposition TPR cases. In the review of plea withdrawal for a no contest plea to the grounds for a TPR grounds, we have treated the request for postdisposition plea withdrawal to be akin to post-sentencing plea withdrawal, applying a *Bangert* analysis. *See Waukesha Cnty. v. Steven H.*, 2000 WI 28, ¶42, 233 Wis. 2d 344, 607 N.W.2d 607, *holding modified on other grounds by St. Croix Cnty. DHHS v. Matthew D.*, 2016 WI 35, 368 Wis. 2d 170, 880 N.W.2d 107; *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986). We conclude that *Jenkins* is not applicable to the procedural posture of Lucy's motion.

extrinsic to the plea colloquy, like ineffective assistance of counsel or coercion, renders a plea infirm," the defendant makes a motion for relief under the *Nelson/Bentley* standard.[6]  *State v. Howell*, 2007 WI 75, ¶74, 301 Wis. 2d 350, 734 N.W.2d 48.

¶25    Although Lucy considers her misunderstanding to have arisen extrinsic to the plea colloquy, when we review the six required duties for the court during a voluntary consent to a TPR, we consider that Lucy's complaint falls under whether the circuit court ascertained "the parent's understanding of … the consequences of termination."  *T.M.F.*, 112 Wis. 2d at 196.  On that basis, an allegation of a flawed plea colloquy falls under a *Bangert* analysis, which would require her to (1) make a prima facie showing of the court's violation of a mandatory duty, and (2) allege that she "did not, in fact, know or understand the information that should have been provided during the plea colloquy."  *Taylor*, 347 Wis. 2d 30, ¶32; *Waukesha Cnty. v. Steven H.*, 2000 WI 28, ¶42, 233 Wis. 2d 344, 607 N.W.2d 607, *holding modified on other grounds by St. Croix Cnty. DHHS v. Matthew D.*, 2016 WI 35, 368 Wis. 2d 170, 880 N.W.2d 107.

¶26    In Lucy's postdisposition motion, she argues that she was unaware that the outcome that occurred—terminating her rights despite the court granting the guardianship and maintaining Adam's rights—was a possible consequence of her voluntary consent.  The record reflects that there was no discussion of the State dismissing Lucy's TPR action at disposition; however, this outcome was discussed when Adam considered pleading no contest to the grounds.  There was

---

[6] *See Nelson v. State*, 54 Wis. 2d 489, 195 N.W.2d 629 (1972); *State v. Bentley*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996).

no discussion that the court would accept Lucy's voluntary consent, but then deny the TPR at disposition and maintain her rights during the guardianship. However, Lucy fails to explain why this was information the court should have ascertained about Lucy's understanding. *See Brown Cnty. v. Brenda B.*, 2011 WI 6, ¶53, 331 Wis. 2d 310, 795 N.W.2d 730 (holding that statutory requirement that the court inform parents about possible dispositions should be relevant to the plea, but does not require "hypothetical but improbable outcomes"). Further, she has not alleged why she did not ask questions about this issue during the plea colloquy. The record reflects that the circuit court provided a thorough explanation of the consequences of termination during the plea colloquy. We conclude that Lucy has failed to make a prima facie case that the circuit court failed to fulfill its duties under *T.M.F.* to ascertain her consent was informed and voluntary with regard to the consequences of the termination. *See T.M.F.*, 112 Wis. 2d at 188; *Steven H.*, 233 Wis. 2d 344, ¶51. Therefore, under a *Bangert* analysis, her claim for plea withdrawal fails.

¶27 Alternately, we address her argument that her mistaken understanding as an issue entirely outside of the plea colloquy, arising out of not understanding there was a possible outcome that ultimately terminated her rights despite the guardianship and allowed Adam to retain his parental rights. However, Lucy has failed to allege sufficient material facts to warrant relief for the alleged manifest injustice. The circuit court holds an evidentiary hearing on a motion for plea withdrawal if the party's motion "alleges facts which, if true, would entitle the defendant to relief[.]" *Nelson v. State*, 54 Wis. 2d 489, 497, 195 N.W.2d 629 (1972). However, the circuit court has discretion to deny such a motion without a hearing if the defendant fails to allege sufficient material facts in the motion, presents only conclusory allegations, or "if the record conclusively demonstrates

that the defendant is not entitled to relief." *Id.* at 497-98. A party seeking plea withdrawal "must do more than merely allege that he [or she] would have pled differently; such an allegation must be supported by objective factual assertions." *State v. Bentley*, 201 Wis. 2d 303, 313, 548 N.W.2d 50 (1996).

¶28 Under the *Nelson/Bentley* standard, we conclude Lucy's allegations are conclusory. She alleged that her trial counsel "informed" her that her "parental rights would not be terminated if there was a guardianship by [Sophia] in place and if [Adam] maintained his parental rights." A parent seeking postdisposition relief must allege "who, what, where, when, why, and how" in the motion itself to allow the court to meaningfully review the claim. *See State v. Allen*, 2004 WI 106, ¶23, 274 Wis. 2d 568, 682 N.W.2d 433. Lucy does not provide factual allegations upon which we can meaningfully review her claim of mistaken understanding. *See id.* As proof of her intentions, she can only point to the premature notice of intent to pursue postdisposition relief that she filed in August 2021, shortly after the plea colloquy on her voluntary consent, but before the termination was ordered in November 2021. This does not provide sufficient material facts or even a reasonable inference of such facts that her motion warrants an evidentiary hearing, much less an order to allow her to withdraw her plea. Therefore, we conclude her claim fails under the *Nelson/Bentley* standard for plea withdrawal.

¶29 Additionally, we conclude that the circuit court did not err when it denied Lucy's postdisposition motion for plea withdrawal without an evidentiary hearing. We again apply the same standards and reasoning for plea withdrawal in the criminal context. To warrant an evidentiary hearing on a postconviction motion to withdraw a plea of guilty, or no contest, the defendant must satisfy the requirements of *Bangert* or *Nelson/Bentley*." *See Howell*, 301 Wis. 2d 350, ¶24.

> A reviewing court reviews a circuit court's exercise of its discretion to grant or deny a hearing when as a matter of law the defendant's motion fails to allege sufficient facts entitling the defendant to relief or presents only conclusory allegations, or the record, as a matter of law, conclusively demonstrates the defendant is not entitled to relief. This review determines whether the circuit court erroneously exercised its discretion.

*Id.*, ¶79. Lucy has failed to allege sufficient material facts to make a prima facie claim under **Bangert** or **Nelson/Bentley**. Her allegations are conclusory and therefore, we conclude that the circuit court did not erroneously exercise its discretion when it denied her motion without a hearing.

## CONCLUSION

¶30 For the reasons stated above, we conclude that Lucy's consent to the termination of her parental rights to Anthony was voluntary and informed. Further, we conclude that the circuit court did not erroneously exercise its discretion when it denied her postdisposition motion without a hearing.

> *By the Court.*—Order affirmed.

> This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.