**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 6, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP441**

Cir. Ct. No. **2021TP159**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

IN RE THE TERMINATION OF PARENTAL RIGHTS TO P. M., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

R. A. M.,

      RESPONDENT-APPELLANT.

      APPEAL from an order of the circuit court for Milwaukee County: ELLEN R. BROSTROM, Judge. *Reversed and cause remanded with directions*.

¶1     WHITE, J.[1]  R.A.M. appeals the order terminating her parental rights to her child, P.M.  She argues that the circuit court lost competency because the circuit court proceeded to the dispositional phase of the termination of parental rights (TPR) proceedings in violation of a statutory mandate.  For the reasons explained below, we agree that the court lost competency and we conclude that the circuit court violated R.A.M.'s due process rights.  We reverse the TPR order and remand with directions for the circuit court to hold a new dispositional hearing.

## BACKGROUND

¶2     R.A.M. is the mother of P.M., born in February 2015.  P.M. was removed from his mother's care in November 2017, after a police investigation showed indications of physical child abuse.  R.A.M. was convicted of physical abuse of a child as a result of this incident; she served a twelve-month prison sentence and twenty-four months of extended supervision.  P.M. remained in out-of-home care after he was detained; his foster placement was changed to his paternal uncle and his family in July 2019.

¶3     In July 2021, the State brought the underlying petition to terminate R.A.M.'s parental rights to P.M.[2]  The State alleged two grounds for the TPR: (1) that P.M. continues to be a child in need of protection or services (CHIPS); (2) that R.A.M. failed to assume parental responsibility for P.M.

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2]  We note that P.M.'s father died in 2020 and his rights are not at issue in this case.

¶4      During the first hearing on the TPR petition in July 2021, R.A.M. acknowledged receiving the petition in the mail, and the court expressly stated that it was a "standing order[] in the case," that she "make all court appearances."  The court warned R.A.M. that if she failed to appear, she could be found in default and the decisions concerning P.M. would be made without her input.  The record reflects that R.A.M. appeared for at least nine court hearings after that initial hearing.

¶5      After R.A.M. waived her right to a jury trial, the case proceeded to a court trial, held on March 28 and 31, 2022, April 1, 2022, and July 5, 2022. R.A.M. appeared at the March and April trial dates, but did not appear at the July date.  R.A.M. was called by the State as the first witness on the first day of trial; and she testified in the defense case on April 1, 2022.  The court also heard testimony from the Milwaukee Police Department officer involved in the original detainment of P.M.; the Division of Milwaukee Child Protective Services (DMCPS) initial assessment worker (IAW) who made the initial contact with P.M.; three (of the four) family case managers assigned to P.M.'s case; the visitation supervisor who supervised R.A.M.'s visits with P.M from approximately 2019 through 2021; a mental health therapist from Pennfield Children's Center who worked with P.M. in his foster placement in 2019 and 2020 and who also worked with R.A.M. in 2020; and a licensed professional counselor who oversaw therapeutic visitation for R.A.M. with P.M. in 2019.

¶6      On April 1, before the completion of the examination of R.A.M., the court concluded that this case would need at least two more days to complete the court trial and any disposition.  After discussing the timing, the court decided to order transcripts of the March and April trial dates, and after negotiating calendar conflicts, the next trial dates were set on July 5, 6, and 15, 2022.

¶7    R.A.M. did not appear on July 5, 2022. Trial counsel informed the court that R.A.M. was having a custody dispute over her younger daughter, and she was attempting to clear a bench warrant issued for a criminal complaint for interference with custody. The circuit court stated that it could see the warrant in her review of the court records, but the court expressed displeasure that the warrant had been issued on June 22, and R.A.M. waited until this court date to attempt to resolve it. Trial counsel responded that R.A.M. claimed to be in close contact with the District Attorney's (DA) office, she had filed a complaint with DMCPS about her daughter's father, and she was unaware of the warrant until late the week before.

¶8    The prosecutor informed the court that her colleague at the DA's office stated that R.A.M. had been offered an opportunity to resolve things prior to the issuance of charges and she had not done so. The State moved for default, asking the court "to strike her contest posture and find her in default for failing to comply with court orders and failing to appear here in court." The GAL joined the request.

¶9    The court stated that R.A.M.'s decision to clear the warrant seemed "conveniently timed[.]" The court stated that R.A.M.'s actions showed a lack of prioritization over P.M.'s situation. The court further expressed that the court had only four weeks until the judicial calendar rotation and wanted to resolve this case before that. The court found that the "constellation of facts appear[ed] pretty egregious and in bad faith … I know from her perspective she thinks it looks like a good excuse for why she's not here. But given all of those facts, I guess I'm not persuaded that that's credible."

¶10    Trial counsel disagreed, arguing that R.A.M. was trying to do what was best for her child, and did not think that the non-appearance that morning was in "bad faith … [or] rises to the level of being egregious." Trial counsel stated that there were still two additional days reserved for this matter and asked the court for a delay.

¶11    Instead, the court stated it would allow trial counsel to represent R.A.M. in her absence. The court stated, "if she doesn't show up at some point this morning, I will grant the State's motion to strike her contest posture." The court felt it was being manipulated by R.A.M. and that she should have dealt with the "court of law" over this case and that it was not in P.M.'s best interest to delay.

¶12    After a short delay, at about 10:00 a.m., the court, after discussion with the prosecutor and the family case manager, decided R.A.M. may not have been candid with trial counsel. It found that R.A.M.'s story was not credible, the case could not proceed on the merits without her, the State was prejudiced by not being able to complete cross-examination of R.A.M., and struck R.A.M.'s contest posture because her conduct was "egregious and bad faith and without justification." The circuit court then decided to use the court trial proceedings for the "prove up" for the grounds for the TPR petition.[3]

---

[3] The "prove up" is what generally occurs if the TPR "petition is not contested" meaning the parent has pleaded no contest to the grounds or the parent's contest posture had been struck by the court as a sanction for failing to obey court orders. WIS. STAT. § 48.422(3). In such a case, "the court shall hear testimony in support of the allegations in the petition," and fulfill other statutory duties. *Id.*

¶13   The circuit court informed trial counsel, "normally, on prove-up, I don't have the parents' lawyers ask any questions. But I don't know if you feel differently about it." To which trial counsel responded she "would feel differently about it" and she "would like to be able to ask the case manager questions." The court stated, "Sure" and allowed trial counsel to cross-examine the family case manager who testified for the prove up.

¶14   During the State's closing testimony proving the grounds, it referenced R.A.M.'s criminal records in a previous charge related to one of her older children, trial counsel interrupted to note that "we had specific conversations about that may have been relevant for DMCPS's planning, but that shouldn't be considered as evidence." The State responded that R.A.M. "forfeited her right to participate in trial, and the Court has struck her contest posture." The court concluded that "it is correct that at this point her contest posture is struck" and procedurally, she cannot object. Trial counsel was allowed to make a closing argument.

¶15   After a break, proceedings resumed at 2:00 p.m., the court noted that R.A.M.'s "continued lack of contact and involvement here supports the [c]ourt's earlier default ruling." The court found that "the State has proven by clear and convincing and satisfactory evidence the two grounds that were alleged." The court found R.A.M. unfit and concluded it would "move right into disposition." The court stated, it would "again find [R.A.M.] in default for purposes of disposition for her failure to appear here this afternoon." The court found "her failure to continue to appear, her failure to stay in contact with her lawyer on this most important of days, despite the [c]ourt's order to do so, to be egregious, in bad faith, and without justification."

¶16  The court told trial counsel, if R.A.M. showed up the next day, the court would not "preclude her from participating." Trial counsel clarified, "if she does show up tomorrow, would the [c]ourt consider vacating the default as to—" and the court responded, "Only if she's got … a really good reason with solid documentation." Trial counsel stated the default "affects my ability whether or not I can call witnesses. Because if she's in default, I can cross-examine, but I can't call." The court responded, "Correct … obviously, I'll consider anything on the merits that you would bring to me. But I can tell you, it's going to need to be highly credible."

¶17  The case moved immediately into the dispositional phase and relied only on testimony from the final family case manager. Trial counsel was allowed to make a closing argument. That same afternoon proceedings concluded at 3:45 p.m.; the court concluded the dispositional phase and determined it was "in [P.M.'s] best interest that" the court terminate R.A.M.'s rights. The court reviewed the six required statutory factors on the record. The court noted that R.A.M. was "difficult." The court granted the TPR petition and terminated R.A.M.'s parental rights to P.M. The court vacated the two additional days reserved for the case.

¶18  R.A.M. appeals.

**DISCUSSION**

¶19  R.A.M. argues that her due process rights were violated by the circuit court in the TPR proceedings. We begin with the legal frameworks for: the circuit court's competency to hear a case; and the disposition of a TPR petition, including the right to counsel and the court's authority to sanction a parent with default. We then turn to R.A.M.'s arguments: that the court implicitly

7

found that R.A.M. waived her right to counsel, that the circuit court lost competency to proceed under WIS. STAT. § 48.23(2)(b)3., and that her due process rights were violated when the court proceeded to the dispositional phase after it lost competency.

¶20     In order to determine whether the circuit court lost competency, we must interpret WIS. STAT. § 48.23(2) for the waiver of R.A.M.'s right to counsel. This issue requires statutory interpretation, which is a question of law that we review independently. *St. Croix DHHS v. Michael D.*, 2016 WI 35, ¶15, 368 Wis. 2d 170, 880 N.W.2d 107.  Statutory interpretation begins by looking at the language of the statute and if the meaning of the statute is plain, our inquiry ordinarily stops. *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.  We consider the statute in context, applying the "common, ordinary, and accepted" meaning of the text, and attempt to give effect to every word to avoid surplusage. *Id.*, ¶¶45-46.  We may not disregard the plain and clear words in the statute. *Id.*, ¶46.  If the language is unambiguous, we apply the statute according to that meaning. *Id.*

### I.     Legal standards

#### A.  Circuit court competency

¶21     "A circuit court has subject matter jurisdiction, conferred by the state constitution, to consider and determine any type of action[.]" *State v. Bollig*, 222 Wis. 2d 558, 565, 587 N.W.2d 908 (Ct. App. 1998).  However, a circuit court's competency to adjudicate a particular case before it may be lost as a result of the "failure to comply with a statutory mandate pertaining to the exercise of subject matter jurisdiction." *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶9, 273 Wis. 2d 76, 681 N.W.2d 190.  "Whether a particular failure to comply with a

statutory mandate implicates the circuit court's competency depends upon an evaluation of the effect of noncompliance on the court's power to proceed in the particular case before the court." *Id.*, ¶10. While "[m]any errors in statutory procedure have no effect on the circuit court's competency … when the failure to abide by a statutory mandate is 'central to the statutory scheme'" of the issue, "the circuit court's competency to proceed [may] be implicated." *Id.* (quoting *Bollig*, 222 Wis.2d at 567-68). Whether a circuit court has competency to resolve a case is a question of law we review independently. *Village of Elm Grove v. Brefka*, 2013 WI 54, ¶13, 348 Wis. 2d 282, 832 N.W.2d 121.

### B. Disposition of a TPR petition

¶22 Termination of parental rights is governed by the Wisconsin Children's Code, WIS. STAT. ch. 48. The first step is a fact-finding hearing pursuant to WIS. STAT. § 48.424 to determine whether the grounds under WIS. STAT. § 48.415 exist to terminate parental rights exist. The State has the burden to show that grounds for termination exist by clear and convincing evidence. *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶22, 246 Wis. 2d 1, 629 N.W.2d 768. If the grounds are found to exist by the fact-finder, whether a jury or the court, "the court shall find the parent unfit." Sec. 48.424(4). The second step is the dispositional phase, in which the circuit court decides whether the evidence warrants the termination of parental rights and if the termination is in the best interests of the child. *Evelyn C.R.*, 246 Wis. 2d 1, ¶23. To determine whether

termination is in the child's best interests, the circuit court must consider six statutory factors. WIS. STAT. § 48.426.[4]

¶23 "One of the procedural safeguards the legislature has afforded to parents in termination of parental rights proceedings is the right to counsel." *State v. Shirley E.*, 2006 WI 129, ¶30, 298 Wis. 2d 1, 724 N.W.2d 623. WISCONSIN STAT. § 48.23(2) provides that in "an involuntary termination of parental rights, any parent who appears before the court shall be represented by counsel," with three provisions. First, a parent age eighteen or older "may waive counsel if the court is satisfied that the waiver is knowingly and voluntarily made." Sec. 48.23(2)(b)1. Second, a parent under age eighteen "may not waive counsel." Sec. 48.23(2)(b)2. Third, at issue here:

---

[4] In determining the disposition of a TPR petition, the circuit court must consider, but is not limited to, the following six factors:

> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d) The wishes of the child.
>
> (e) The duration of the separation of the parent from the child.
>
> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

WIS. STAT. § 48.426(3).

> [A] parent 18 years of age or over is presumed to have waived his or her right to counsel and to appear by counsel if the court has ordered the parent to appear in person at any or all subsequent hearings in the proceeding, the parent fails to appear in person as ordered, and the court finds that the parent's conduct in failing to appear in person was egregious and without clear and justifiable excuse. Failure by a parent 18 years of age or over to appear in person at consecutive hearings as ordered is presumed to be conduct that is egregious and without clear and justifiable excuse. If the court finds that a parent's conduct in failing to appear in person as ordered was egregious and without clear and justifiable excuse, the court may not hold a dispositional hearing on the contested adoption or involuntary termination of parental rights until at least 2 days have elapsed since the date of that finding.

Sec. 48.23(2)(b)3.

¶24    The circuit court has inherent and statutory authority to sanction a party for failing to obey a court order, with the limitation that the sanctions be "just." *See* WIS. STAT. §§ 804.12(2)(a), 805.03. "Wisconsin courts have interpreted this limitation to mean that dismissal requires that the non-complying party has acted egregiously or in bad faith." *Industrial Roofing Servs., Inc. v. Marquardt*, 2007 WI 19, ¶43, 299 Wis. 2d 81, 726 N.W.2d 898. For a circuit court to enter default judgment, it is not required to analyze a "specific set of factors" but instead it focuses on the degree to which the party's conduct impairs justice in this action and justice in the operation of our judicial system. *Brandon Apparel Group., Inc. v. Pearson Properties, Ltd.*, 2001 WI App 205, ¶11, 247 Wis. 2d 521, 634 N.W.2d 544 (citation omitted). We review the circuit court's decision to impose a sanction of default judgment under the erroneous exercise of discretion standard. *Id.*, ¶10.

¶25    It is within the circuit court's discretion to strike a parent's contest posture as a sanction for failing to obey a court order and to default the parent on

11

the grounds for the TPR petition.[5]  *See Evelyn C.R.*, 246 Wis. 2d 1, ¶¶17-18.  In the event that a parent's contest posture is struck as a sanction, the court "shall hear testimony in support of the allegations in the petition," and the State is required to "prove up" the grounds for the TPR.  *See* WIS. STAT. § 48.422(3).

## II.     *Waiver of the issue of competency*

¶26     As a threshold issue, we address the State's argument that R.A.M. waived her right to assert that the circuit court lost competency because she failed to make that argument to the circuit court.  The State relies upon *Schoenwald v. M.C.*, 146 Wis. 2d 377, 432 N.W.2d 588 (Ct. App. 1988), in which this court held that "because the parents could have litigated the trial court's competency to extend the dispositional order [earlier] and failed to do so either before the trial court at that time or by an appeal, they are precluded from raising the question in this litigation."  *Id.* at 396.[6]

¶27     "[T]he common-law waiver rule applies to challenges to the circuit court's competency, such that a challenge to the court's competency will be deemed waived if not raised in the circuit court[.]"  *Mikrut*, 273 Wis. 2d 76, ¶25.  However, "a court's loss of power due to the failure to act within statutory time periods cannot be stipulated to nor waived."  *State v. B.J.N.*, 162 Wis. 2d 635,

---

[5] R.A.M. points out that the circuit court misstated the law when it stated that it would take under advisement the motion to default R.A.M. for the dispositional phase as well as the grounds.  The dispositional phase requires the court to consider the six statutory factors and the best interests of the child; those statutory duties would not be diminished by sanctioning a parent. *See* WIS. STAT. § 48.426.

[6] R.A.M. further notes that the State's reliance on *Schoenwald v. M.C.*, 146 Wis. 2d 377, 432 N.W.2d 588 (Ct. App. 1988) was surprising because that case allows a parent to challenge competency "by an appeal," which is the action R.A.M. is taking.  *See id.* at 396.

657, 469 N.W.2d 845 (1991). Although *M.C.* reached a conclusion that the parent had waived the right to object, that case predated *B.J.N.* In *Mikrut*, our supreme court affirmed that *B.J.N.* was valid law and concluded that its holding applied only to specific circumstances of "loss of competency based upon noncompliance with mandatory statutory time periods." *Mikrut*, 273 Wis. 2d 76, ¶25. We conclude that the State has not distinguished that the time period at issue in WIS. STAT. § 48.23(2)(b)3. would not be a mandatory statutory time period.

¶28 Further, the State argues that R.A.M. waives her challenge under WIS. STAT. § 48.315(3), which provides in part that "[f]ailure to object to a period of delay or a continuance waives any challenge to the court's competency to act during the period of delay or continuance." R.A.M. responds that she is not claiming that the court failed to act within a statutory time period, but that the circuit court acted before it had the power to do so. We conclude that § 48.415(3) does not address the facts and circumstances of this case and the application of WIS. STAT. § 48.23(2)(b)3. Therefore, we conclude that R.A.M. has not waived her objection to the circuit court's competency.

### III.    *R.A.M.'s arguments*

#### A. *Waiver of counsel*

¶29 R.A.M. argues that the court lost competency by acting prior to the time allowed by the statutory mandate in WIS. STAT. § 48.23(2)(b)3. R.A.M. contends that statute creates a presumption of a waiver of counsel when three facts are true: (1) the parent has been ordered to appear "in person at any or all subsequent hearings in the proceeding," (2) "the parent fails to appear in person as ordered," and finally (3) "the court finds that the parent's conduct in failing to appear in person was egregious and without clear and justifiable excuse." R.A.M.

asserts that the record reflects those three facts occurred in her case and therefore, the presumption of waiver of counsel applies.

¶30    R.A.M. asserts that the circuit court implicitly found that R.A.M. waived her right to counsel, as demonstrated the circuit court's treatment of trial counsel's ability to act. The record reflects that when trial counsel objected to the consideration of certain information during the prove up, the State argued that "[R.A.M.] has forfeited her right to participate in trial, and the court has struck her contest posture." The court then responded, "it is correct that at this point her contest posture is struck. So … I don't think, procedurally, she can object." The State points out that the circuit court eventually declined to consider the objected-to information, which it argues means that trial counsel was allowed to meaningfully participate. However, that outcome does not negate that the court considered trial counsel's role to be reduced and R.A.M. not to have the full right to counsel.

¶31    The State argues that R.A.M. was not denied her right to counsel and that while the circuit court struck her contest posture, it did not discharge her counsel. It points out that even after the court granted the default motion, R.A.M.'s counsel was allowed to cross-examine witnesses and to make closing arguments in both the grounds and the dispositional phases. Therefore, the State

contends that R.A.M.'s right to counsel was not waived and the time periods in WIS. STAT. § 48.23(2)(b)3. were not triggered.[7]

¶32 However, the State ignores the circuit court's statements that showed it considered trial counsel to have a proscribed and diminished representation after the egregious conduct without justification finding for default. The State also ignores the presumption of waiver in the plain language of the statute. The State fails to address the presumption, arguing instead that the third situation in WIS. STAT. § 48.23(2)(b) applies when a parent fails to continue to participate in a TPR action. Although the State cites to other unpublished yet persuasive TPR cases,[8] we consider those cases distinguishable, and we cannot ignore the plain meaning of the language in statute. *State ex rel. Kalal*, 271 Wis. 2d 633, ¶46. The statute states that a parent "is presumed to have waived his or her right to counsel and to appear by counsel" when the parent is ordered to appear, does not appear, and the court finds the absence was egregious and without a justifiable excuse. Sec. 48.23(2)(b)3. That situation and those three findings were made. We conclude that R.A.M. has demonstrated that her right to counsel was waived,

---

[7] We reject the State's argument that WIS. STAT. § 48.23(2)(b)3. could not apply because R.A.M.'s counsel was not formally discharged because it is unsupported by legal authority. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). At most it relies upon *State v. J.B.*, Nos. 2016AP483-5, unpublished slip op. (WI App Oct. 4, 2016), which concluded that a "explicit finding" of the waiver of counsel to trigger the statute. This court did not require discharge of counsel in that case.

[8] For example, the State cites to *J.B.*, Nos. 2016AP483-5, which this court concluded, when faced with a similar argument that the presumption of waiver occurs when the three facts were found (order to appear, non-appearance, and egregious conduct), that "[e]ven where those conditions are met, there is no indication that a default converts automatically into a waiver of the right to counsel." *Id.*, ¶19. This court concluded that the waiver of counsel was a separate finding than the default sanction and that WIS. STAT. § 48.23(2)(b)3. was only triggered by an express waiver of counsel by the circuit court. The plain meaning of the language of the statute does not require an express waiver or require the discharge of counsel. Therefore, we decline to adopt this reasoning.

15

that the State has not overcome the presumption of that waiver, and that the waiver triggered the application of § 48.23(2)(b)3.

### B.  Competency under WIS. STAT. § 48.23(2)(b)3.

¶33    R.A.M. argues that the circuit court lost competency over the case by acting before the two day time elapsement provided in WIS. STAT. § 48.23(2)(b)3. after the waiver of counsel.  In order to determine whether the circuit court lost competency, we must determine whether the time period was central to the statutory scheme.  *See Mikrut*, 273 Wis. 2d 76, ¶10.  Our supreme court has addressed the importance of mandatory time constraints in the Children's Code, noting, "that Chapter 48 imposes other mandatory time limitations as well, the violation of which precipitates a loss of competency." *Mikrut*, 273 Wis. 2d 76, ¶12.

¶34    We begin with the relevant statutory language:

> If the court finds that a parent's conduct in failing to appear in person as ordered was egregious and without clear and justifiable excuse, the court may not hold a dispositional hearing on the contested adoption or involuntary termination of parental rights until at least 2 days have elapsed since the date of that finding.

Sec. 48.23(2)(b)3.  By the plain meaning of the text, the court is prohibited from moving directly to the dispositional hearing for two days after the waiver of counsel based upon a parent's non-appearance and egregious conduct without excuse.  *See State ex rel. Kalal*, 271 Wis. 2d 633, ¶46.  A required delay in proceedings is undoubtedly unusual in the statutes.  However, we find no ambiguity in its meaning.  Further, "[w]here statutory restrictions are couched in negative terms, they are usually held to be mandatory."  *Brookhouse v. State Farm Mut. Auto. Ins. Co.*, 130 Wis. 2d 166, 170, 387 N.W.2d 82 (Ct. App. 1986)

16

("May not is a negative term." (quotation marks omitted)). Accordingly, we conclude that the two day delay is a mandatory time period and the violation of its terms resulted in a loss of competency for the circuit court over the disposition of this case.

¶35 The State points out that after *Mikrut* was decided, the legislature amended WIS. STAT. § 48.315 addressing delays, continuances and extensions, providing that, "[f]ailure by the court or a party to act within any time period specified in this chapter does not deprive the court of personal or subject matter jurisdiction or of competency to exercise that jurisdiction." R.A.M. responds that she is not asserting that the circuit court exceeded a mandatory, maximum time limitation, but it acted before the time period began. As we addressed above, we agree that § 48.315 does not change our interpretation of WIS. STAT. § 48.23(2)(b)3.[9]

¶36 We conclude that the circuit court lost competency over the disposition of the TPR petition when it moved to the dispositional phase in violation of the statutory mandate.

## C. Due process

¶37 Finally, R.A.M. argues that the circuit court violated her right to due process when it proceeded to the dispositional phase of the TPR action without

---

[9] Further, when we review the remedies within the continuances statute, it includes that "[i]f the court … does not act within a time period … the court … may grant a continuance under sub. (2), dismiss the proceeding without prejudice, release the child from secure or nonsecure custody … or grant any other relief that the court considers appropriate." WIS. STAT. § 48.315(4). We do not interpret the State to argue that the court did anything other than proceed immediately to the disposition, or to argue that the circuit court decided it had "good cause" to ignore the required time delay.

competency over the case. "Terminations of parental rights affect some of parents' most fundamental human rights." *Evelyn C.R.*, 246 Wis. 2d 1, ¶20. "A parent's interest in the parent-child relationship and in the care, custody, and management of his or her child is recognized as a fundamental liberty interest protected by the Fourteenth Amendment." *Steven V. v. Kelley H.*, 2004 WI 47, ¶22, 271 Wis. 2d 1, 678 N.W.2d 856. A parent's private interest in a termination of parental rights proceeding is a grievous loss, namely the permanent deprivation of a legal relationship with his or her child." *Brown Cnty. v. Shannon R.*, 2005 WI 160, ¶58, 286 Wis. 2d 278, 706 N.W.2d 269. "When the State seeks to terminate familial bonds, it must provide a fair procedure to the parents, even when the parents have been derelict in their parental duties." *Id.*, ¶56.

¶38 R.A.M. argues that the circuit court's decision to move forward with the dispositional phase of the TPR proceedings was contrary to statute, as well as in contradiction to the court's statement to trial counsel that it would allow R.A.M. to move to vacate the default grounds with a very good excuse. The court scheduled hearing times on July 5 and 6 and July 15, 2022. After finding grounds for termination of R.A.M.'s parental rights, the circuit court told counsel that it would allow R.A.M. to participate in the disposition hearing if she appeared as scheduled the following day. However, the court instead conducted the entire dispositional hearing in under two hours, on the same day, denying R.A.M. an opportunity to appear and perhaps provide a justifiable reason to vacate the default finding or at least allow her to participate in the dispositional phase.

¶39 "A fundamental guarantee of due process of law is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.*, ¶64 (citation omitted). Although the termination of parental rights does not involve a criminal penalty, it is a basic right to be given due process when facing this "grievous loss."

*Id.*, ¶¶58, 64. R.A.M. expressly states she does not challenge the ability of the legislature or the circuit court to limit her right to be heard by defaulting her on the grounds for the TPR based on the court's finding that her failure to appear was egregious and without justifiable excuse.[10] However, she argues that WIS. STAT. § 48.23(2)(b)3. provides a parent with an opportunity to be heard in the dispositional phase after defaulting on the grounds. She asserts that the two day required delay before the dispositional phase prevents the situation before us— where the parent is defaulted on the grounds, the court implicitly finds a waiver of the parent's right to counsel, and the court moved immediately to the prove up and disposition.

¶40 The statutory procedure for the fact-finding hearing on the grounds for the TPR petition provides that after the grounds are found by the court or jury, and the court finds the parent unfit, the court then "proceed[s] immediately to hear evidence and motions related to the dispositions" *except as provided in WIS. STAT. § 48.23(2)(b)3*. WIS. STAT. § 48.424(4). Therefore, if § 48.23(2)(b)3. applies to the case before the court—meaning the court has found the parent

---

[10] Because R.A.M. does not challenge the circuit court's findings that her non-appearance on July 5 was egregious and without justifiable excuse, we do not examine that issue. We will not disturb the circuit court's findings, but we do note concern that missing a single hearing while attempting to clear a criminal matter may have been an imperfect choice, but the court's concern over R.A.M.'s "priorities" or "manipulation" does not seem founded in the record. The record does not make clear how the court reached this conclusion. "Egregious conduct is conduct that, although unintentional, is 'extreme, substantial and persistent.'" *Teff v. Unity Health Plans Ins. Corp.*, 2003 WI App 115, ¶14, 265 Wis. 2d 703, 666 N.W.2d 38 (citation omitted). This court has also considered egregious conduct to be "extraordinary in some bad way; glaring, flagrant." *East Winds Properties, LLC v. Jahnke*, 2009 WI App 125, ¶15, 320 Wis. 2d 797, 772 N.W.2d 738. Our examination of the record does not support that R.A.M. repeatedly missed hearings or failed to comply with court orders. Even within WIS. STAT. § 48.23(2)(b)3., a parent's failure "to appear in person at consecutive hearings as ordered is presumed to be conduct that is egregious and without clear and justifiable excuse." This logically supports that missing a single hearing or non-consecutive hearings would not trigger the presumption of egregious conduct.

waived a right to counsel—then, the court may not immediately proceed to disposition and must wait at least the two days required by statute (and not more than forty-five days, as is also required). When the court fails to obey the statutory time periods, it not only lacks competency to proceed, it violates the parent's right to due process.

## CONCLUSION

¶41   For the reasons stated above, we conclude that R.A.M.'s due process rights were violated when the circuit court determined the disposition of the TPR petition when it lacked competency to do so, by operation of WIS. STAT. § 48.23(2)(b)3. We reverse the TPR order and remand with directions to hold a new dispositional hearing.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.