# COURT OF APPEALS
## DECISION
## DATED AND FILED

## October 29, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2024AP1271**
**2024AP1272**
**2024AP1273**
**STATE OF WISCONSIN**

Cir. Ct. Nos. **2023TP108**
**2023TP109**
**2023TP110**

**IN COURT OF APPEALS**
**DISTRICT I**

---

APPEAL NO. 2024AP1271

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A.M.M.C., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

T.H.-M.,

      RESPONDENT-APPELLANT.

---

**APPEAL NO. 2024AP1272**

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO E.B.H., A PERSON UNDER THE AGE OF 18:**

**STATE OF WISCONSIN,**

      **PETITIONER-RESPONDENT,**

  **V.**

**T.H.-M.,**

      **RESPONDENT-APPELLANT.**

---

**APPEAL NO. 2024AP1273**

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO S.B.B., JR., A PERSON UNDER THE AGE OF 18:**

**STATE OF WISCONSIN,**

      **PETITIONER-RESPONDENT,**

  **V.**

**T.H.-M.,**

      **RESPONDENT-APPELLANT.**

---

APPEALS from orders of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Affirmed*.

¶1 DONALD, P.J.[1] Tiffany appeals from the circuit court's orders terminating her parental rights to her children: Amanda, Ethan, and Sean.[2] Tiffany challenges the sufficiency of the evidence supporting the circuit court's findings that Tiffany was unfit, and that it was in her children's best interest to terminate Tiffany's parental rights. For the following reasons, this court affirms the circuit court's orders.

## BACKGROUND

¶2 In May 2021 Tiffany's children were removed from her care after she was arrested for child neglect in relation to an incident where Amanda, Ethan, and Sean—aged three, one, and two respectively at the time—were left unattended and dirty in a hot car in the sun. Following this incident, the children were found to be in need of protection or services (CHIPS) by the circuit court.

¶3 The CHIPS dispositional orders for each child set six conditions for the safe return of the children to Tiffany's care. These conditions required Tiffany to commit no additional crimes, resolve her outstanding criminal cases, supervise her children and place her children's needs above her own, maintain a safe and

---

[1] These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Cases appealed under WIS. STAT. RULE 809.107 are "given preference and shall be taken in an order that ensures that a decision is issued within [thirty] days after the filing of the appellant's reply[.]" RULE 809.107(6)(e). Conflicts in this court's calendar have resulted in a delay. It is therefore necessary for this court to *sua sponte* extend the deadline for a decision in this case. *See* WIS. STAT. RULE 809.82(2)(a); **Rhonda R.D. v. Franklin R.D.**, 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995). Accordingly, we extend our deadline to the date this decision is issued.

[2] For ease of reading, we refer to the family in this confidential matter using pseudonyms. *See* WIS. STAT. RULE 809.19(1)(g).

clean home, meet her children's medical needs, and provide safe care for her children. The dispositional orders also required the Division of Milwaukee Child Protective Services (DMCPS) to make reasonable efforts to provide Tiffany parenting services, visitation services, and individual therapy to help Tiffany meet her conditions for safe return.

¶4 In June 2023 the State filed petitions to terminate Tiffany's parental rights (TPR) to her children alleging continuing CHIPS and failure to assume parental responsibility as grounds.[3] Tiffany contested the TPR petitions and the circuit court held a court trial. The court heard testimony from a city of Wauwatosa police officer, DMCPS initial assessment specialist, and DMCPS initial assessment supervisor who responded to the emergency which precipitated the children's removal from Tiffany's care in May 2021; a Village of Elm Grove police officer who ticketed Tiffany for operating a vehicle with a restricted controlled substance in June 2022; the two most recent case managers assigned to Tiffany's case; and Tiffany.

¶5 The circuit court heard testimony about Tiffany's progress in meeting her conditions for the return of her children. Tiffany discussed how she struggled with a number of mental health challenges. A case manager testified that Tiffany engaged in individual therapy for a limited time and did not give DMCPS consent to track her progress by contacting her therapist. The case manager also discussed how Tiffany failed to attend many visitations including a three month period where she failed to visit her children at all. These visitations

---

[3] The petitions also sought to terminate the rights of the fathers of each of the children; however, the rights of the fathers are not at issue in this appeal.

only progressed to unsupervised for two visits before they became supervised again due to safety concerns stemming from a physical altercation between Tiffany and her mother, who she was living with at the time. Additionally, there were concerns about domestic violence incidents with Tiffany's boyfriend.

¶6 Regarding Tiffany's efforts to resolve her outstanding criminal cases, she testified that the charges related to the May 2021 incident were dismissed under a deferred prosecution agreement (DPA). Under this agreement Tiffany was prohibited from committing more criminal offenses. The court heard testimony about how Tiffany was subsequently ticketed for operating under the influence of marijuana. Tiffany also testified that she was arrested for operating a vehicle while her license was revoked and failed to appear at many of the court dates associated with that case.

¶7 Additionally, there was testimony regarding the case manager's concerns over the children's care. The case managers testified about several incidents where Tiffany would initially refuse to sign consent forms for her children's medical treatment even when the medical treatment was necessary.

¶8 After hearing the testimony, the circuit court found Tiffany unfit and proceeded to the dispositional phase where it heard further testimony from one of the case managers and Tiffany. Then the circuit court went through each of the factors in WIS. STAT. § 48.426(3) to determine what disposition would be in the best interests of each child. The court found that there was a likelihood of adoption, that the children had been removed from Tiffany's care for "a significant amount of time," that none of the children have significant relationships with any family members outside of each other, that the children do not have a substantial relationship with Tiffany that would cause harm to sever, that the children were

too young to meaningfully express their wishes, and that the children rely on and are comfortable with their foster mother.

¶9 The circuit court also emphasized that if the TPR was not granted the children would most likely "languish in foster care" which would not be in the children's best interests. The court ultimately found that it would be in the best interests of the children to terminate Tiffany's parental rights.

¶10 Tiffany appeals. Additional relevant facts are discussed below.

## DISCUSSION

¶11 Termination of parental rights proceedings involve two phases: a grounds phase to determine whether there are grounds to terminate a parent's rights, and a dispositional phase, to determine whether termination is in the child's best interests. *Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶¶24-28, 255 Wis. 2d 170, 648 N.W.2d 402. "[T]he petitioner must prove the allegations [supporting grounds for termination] in the petition for termination by clear and convincing evidence." *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶22, 246 Wis. 2d 1, 629 N.W.2d 768 (citation omitted; alteration in original). If grounds for termination are found by the fact finder then the parent is found "unfit" under WIS. STAT. § 48.424(4), and the case moves to the dispositional phase, at which the child's best interests are the "prevailing factor" to determine the disposition. *Julie A.B.*, 255 Wis. 2d 170, ¶¶26, 28; WIS. STAT. § 48.426(2).

¶12 Tiffany argues that the circuit court erred in both phases of the TPR proceedings. Tiffany argues that the court's findings at the grounds phase are clearly erroneous and challenges the sufficiency of the evidence supporting the finding that she was unfit on the grounds of continuing CHIPS and failure to

assume parental responsibility. Tiffany also challenges the sufficiency of the evidence supporting the finding that termination of Tiffany's parental rights was in the best interests of her children at the dispositional phase. We reject each of Tiffany's arguments and address them in turn.

### I.    *Sufficiency of the evidence at the grounds phase*

¶13    The State has the burden to prove every element of the continuing CHIPS and failure to assume parental responsibility grounds it alleged by clear and convincing evidence. *See St. Croix Cnty. DHHS v. Michael D.*, 2016 WI 35, ¶28, 368 Wis. 2d 170, 880 N.W.2d 107. "Our standard of review in a challenge to the sufficiency of the evidence is whether there is any credible evidence to sustain the verdict." *Id.*, ¶29. We review this question *de novo* and "consider the evidence in the light most favorable to the verdict." *Tammy W-G. v. Jacob T.*, 2011 WI 30, ¶¶17, 39, 333 Wis. 2d 273, 797 N.W.2d 854.

### A.  *Continuing CHIPS*

¶14    Under WIS. STAT. § 48.415(2) the State was required, for each child, to prove: (1) "the child has been adjudged to be a child … in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders"; (2) "[DMCPS] … has made a reasonable effort[4] to provide the services ordered by the court"; (3) "the child has been placed outside the home for a cumulative total period of [six] months or longer"; and

---

[4] "'[R]easonable effort' means an earnest and conscientious effort to take good faith steps to provide the services ordered by the court which takes into consideration the characteristics of the parent or child, … the level of cooperation of the parent or expectant mother and other relevant circumstances of the case." WIS. STAT. § 48.415(2)(a)2.a.

(4) "[Tiffany] has failed to meet the conditions established for the safe return of the child to the home."

¶15    Tiffany only disputes two of the elements and argues that the State failed to prove that DMCPS made reasonable efforts to provide the services ordered by the circuit court and that Tiffany failed to meet her conditions for the safe return of her children. Our examination of the records shows that there was credible evidence presented to support both elements of this ground.

¶16    First, Tiffany argues DMCPS did not make a reasonable effort to provide her therapy as ordered by the circuit court because Tiffany was required to obtain reports from her therapist. Tiffany's argument does not demonstrate that DMCPS failed to make a reasonable effort to provide Tiffany therapy.

¶17    DMCPS gave Tiffany a referral for a therapist and told her that she could also find one on her own if she wanted to. The records show that DMCPS was attempting to track Tiffany's therapy progress but was unable to do so because Tiffany refused to give the case managers consent to talk to her therapist. Consequently, DMCPS was reliant on what Tiffany told the case managers to track her progress.

¶18    DMCPS's attempts to keep track of Tiffany's therapy progress by asking her for information that it could not obtain without her consent simply does not show, as Tiffany contends, that DMCPS failed to make a reasonable effort to provide Tiffany therapy; rather, it supports the opposite. In addition, DMCPS also attempted to get Tiffany reengaged in therapy to help her manage her mental health after learning she had been discharged by her therapist. Therefore, we

conclude that the evidence is sufficient to show that DMCPS made a reasonable effort to provide Tiffany therapy services.

¶19 Second, Tiffany argues that the evidence does not support that she failed to meet her conditions for return. Tiffany was required to meet six conditions in order for her children to be safely returned to her care. The circuit court found that Tiffany did not satisfy any of the conditions. Upon review of the records, we conclude that there was credible evidence presented to support the court's findings that Tiffany failed to satisfy all the requisite conditions for the safe return of her children.

¶20 The first two conditions required Tiffany to not commit any crimes and to follow through on pending criminal matters. Although Tiffany emphasizes that she complied with the terms of the DPA—by attending domestic violence and parenting classes—both the conditions for safe return and, per her own testimony, the DPA prohibited Tiffany from committing additional crimes. In her testimony before the circuit court Tiffany conceded, and the records confirm, that she failed to satisfy this requirement because she was arrested for operating a vehicle while her license was revoked.

¶21 The third and fifth conditions required Tiffany to supervise her children and meet their needs including managing their medical needs and placing her children's needs above her own. In finding that Tiffany failed to satisfy these conditions, the circuit court relied on her testimony regarding how often she needed to rely on the visitation workers to supervise her children when she was visiting her children.

9

¶22 Furthermore, the case managers testified that all three children had medical needs that Tiffany failed to timely take care of. When Amanda needed a dental surgery and Sean required surgery to fix a hernia, the case managers attempted to get Tiffany's consent to proceed; however, in both instances Tiffany refused give her consent to medical procedures unless the children were returned to her care. In Sean's case, surgery was necessary and Tiffany refused to give her consent until DMCPS started preparing a temporary transfer of guardianship to DMCPS, thus delaying Sean's surgery several months. Similarly, when Ethan needed an MRI, Tiffany also delayed his medical care by initially refusing to give consent.

¶23 Finally, the fourth and sixth conditions required Tiffany to keep a safe, clean home and provide safe care for her children. The records show that Tiffany was homeless for a large portion of the time the children were removed from her care. Tiffany testified that she moved into an apartment with her mother in January or February 2023. However, Tiffany also testified that her mother had attacked her and "is sick." Tiffany explained her mother's condition as being "demonically possessed." This was the impetus for DMCPS to halt Tiffany's unsupervised visitations with her children. Notably, Tiffany still lived with her mother at the time of the court trial. This evidence supports the circuit court's finding that Tiffany has not provided a safe home for her children.

¶24 Additionally, the records show that Tiffany failed to consistently visit her children because she missed visits, was late to visits, and failed to visit her children entirely for a three month period. The case managers further testified that Tiffany would often get so overwhelmed during visitations that she would

have to temporarily leave her children during visits and that her emotions were unstable.

¶25    Therefore, we conclude that there is credible evidence supporting the circuit court's findings that Tiffany failed to satisfy all the required conditions for the safe return of her children.

### B. Failure to assume parental responsibility

¶26    Under WIS. STAT. § 48.415(6)(a) the State was required to prove that Tiffany did not have a "substantial parental relationship" with each of her children.  "'[S]ubstantial parental relationship' means the acceptance and exercise of significant responsibility for the daily supervision, education, protection and care of the child."  § 48.415(6)(b).  The circuit court considers the totality of the circumstances, including "any support or care, or lack thereof" the parent provides; "reasons why a parent was not caring for or supporting [his or] her child[;] and exposure of the child to a hazardous living environment," to determine whether there is a substantial parental relationship.  *Tammy W-G.*, 333 Wis. 2d 273, ¶3.

¶27    Tiffany points to her own testimony about how she provided care to her children prior to their removal from her home and during visitations, that she has met their medical needs, and that she has not abused them to argue that the evidence only supports that she had a substantial parental relationship with all three of her children.  Upon review of the records, we conclude that there is credible evidence to support the circuit court's finding that Tiffany lacked a substantial relationship with her children.

11

¶28 The circuit court recognized that Tiffany did her best to meet her children's needs during visitations; however, it emphasized, and the records support, that Tiffany never progressed to the point that she was meeting her children's needs daily. Tiffany had not ultimately progressed beyond supervised visitations and was often late and missed many visitations.

¶29 Additionally, as discussed in relation to Tiffany's failure to meet her conditions for the safe return of her children, there is sufficient evidence showing that Tiffany failed to meet her children's medical needs such as by purposefully delaying granting her consent for her children to obtain medical procedures. Therefore, we conclude that there is credible evidence supporting the circuit court's finding that Tiffany lacked substantial parental relationships with her children.

## II. *Sufficiency of the evidence at the dispositional phase*

¶30 When determining the disposition of a TPR petition, the prevailing factor is the best interests of the child. WIS. STAT. § 48.426(2). To determine the best interests of the child, the circuit court must consider, but is not limited to, the following six factors:

> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d) The wishes of the child.
>
> (e) The duration of the separation of the parent from the child.

12

> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

Sec. 48.426(3). The "record should reflect adequate consideration of and weight to each factor," however, there is no mandatory relative weight the circuit court must place on each factor. *State v. Margaret H.*, 2000 WI 42, ¶¶29, 35, 234 Wis. 2d 606, 610 N.W.2d 475.

¶31 This court will uphold the circuit court's decision to terminate parental rights if there is a proper exercise of discretion. *Id.*, ¶32. A proper exercise of discretion requires the circuit court to examine the relevant facts, apply a proper standard of law, and use a demonstrated rational process to reach a conclusion that a reasonable judge could reach. *Dane Cnty. DHS v. Mable K.*, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198.

¶32 Tiffany does not dispute that the circuit court considered the required statutory factors and instead argues that the circuit court erroneously exercised its discretion by failing to give any weight to Tiffany's most recent efforts to be in her children's lives. Tiffany further argues that there was no evidence supporting the circuit court's finding that termination of Tiffany's parental rights was in the best interests of the children.

¶33 The circuit court found that there was a likelihood of adoption, the children had been removed from Tiffany's care for "a significant amount of time," none of the children have significant relationships with any family members outside of each other, the children were too young to meaningfully express their wishes, and the children rely on and are comfortable with their foster mother.

Additionally, the court found that although the children knew who Tiffany was, there were no substantial bonds between Tiffany and each child and no harm would be caused by severing these legal relationships in part because Tiffany had a pre-existing relationship with the foster mother and will have a chance to continue to have a relationship with her children as she gets healthier.

¶34   In addition to the evidence supporting the circuit court's consideration of the factors, the court also emphasized that if the TPR was not granted the children would most likely "languish in foster care" because, although Tiffany has made some progress, it found that it was unlikely she will make sufficient progress within the next year.

¶35   Tiffany argues that the circuit court did not give enough weight to Tiffany's testimony about her recent efforts to be a significant part of her children's lives.  However, "it is not our function to review questions as to weight of testimony and credibility of witnesses.  These are matters to be determined by the trier of fact and their determination will not be disturbed where more than one reasonable inference can be drawn from credible evidence." *Johnson v. Merta* 95 Wis. 2d 141, 151-52, 289 N.W.2d 813 (1980).  The circuit court recognized that "[Tiffany] has made some good starts" but ultimately found in light of all the other evidence that it would be in the best interests of the children to terminate Tiffany's parental rights.  Based on our own review of the records, we conclude that the court's finding is supported by credible evidence.

## CONCLUSION

¶36   We conclude that the circuit court's finding that Tiffany was unfit based on the grounds alleged in the TPR petitions was supported by credible

evidence. We also conclude that the circuit court's decision to terminate Tiffany's parental rights to her three children was not an erroneous exercise of discretion and supported by credible evidence. Accordingly we affirm.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

15